**STATE of Tennessee**

**v.**

**Jerry Wayne LANKFORD.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Assigned on Briefs June 24, 2008.

Nov. 3, 2008.

Application for Permission to Appeal Denied by Supreme Court March 23, 2009.

William C. Donaldson, Madisonville, Tennessee, for the appellant, Jerry Wayne Lankford.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; R. Steven Bebb, Dis-

trict Attorney General; and James H. Stutts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

CAMILLE R. McMULLEN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

A McMinn County Circuit Court jury found the Defendant–Appellant, Jerry Wayne Lankford (hereinafter "Lankford"), guilty of aggravated burglary, a Class C felony, and theft of property over $1,000, a Class D felony. As a Range III, persistent offender, Lankford was sentenced to twelve years for aggravated burglary and ten years for theft of property, to be served consecutively, for an effective sentence of twenty-two years' confinement in the Department of Correction. In this appeal, Lankford argues: (1) the evidence did not adequately support the aggravated burglary conviction; and (2) the trial court erred when it determined that a prior aggravated burglary conviction was admissible for impeachment purposes. Upon a thorough review of the record and applicable law, we affirm the judgments of the trial court.

***Facts.*** At trial, Sandy Rawlins testified that she lived at 363 County Road 189, Decatur, Tennessee. Her home was burglarized while she was on vacation in March of 2005. She returned home to find "[m]ud tracked through the house, a window broken, [and] the bedspread taken off [her] bed." She stated her jewelry box and five to six guns were missing from her home. The jury was shown photographs of Rawlins' home which were taken shortly after the burglary occurred. Rawlins spoke with Detective Gary Miller of the McMinn County Sheriff's Department and later made an inventory of all the items that were missing from her home. She was shown jewelry items at trial which she confirmed were taken from her home on the day of the burglary. Significantly, she identified two "old high school I.D. bracelets" with her name inscribed on them. Finally, although most of the stolen property was covered by her insurance, Rawlins estimated its value to be between five and six thousand dollars.

Frank Fairweather, Lankford's previous employer and acquaintance of thirty years, also testified. Fairweather stated that Lankford came to his home between 11:30 a.m. and 12:30 p.m. on March 29, 2005, because "[Lankford] had a bunch of guns and jewelry [Lankford] wanted to sell." Fairweather initially refused to deal with Lankford. Within a week of this meeting, Fairweather called and spoke with Det. Miller to see if anything Lankford had shown him had been reported stolen. At that time, Det. Miller had no such reports of stolen property. Consequently, the next day, Fairweather contacted Lankford and bought a jewelry box and four guns for $125.

Fairweather identified a photograph of the jewelry box and jewelry he purchased from Lankford at trial. It was the same jewelry and jewelry box previously identified by Rawlins as having been stolen from her home in the burglary. Regarding the jewelry inside the box, Fairweather stated:

> Well, I tell you the truth, I never really went through it. I started going through it one day, and I saw a little girl's name on some [sic], a bracelet and a ring and that, and I told my wife, I said, "Put that up. That belongs to some little kid and some day we'll find out who's got it, or who's missed it."

Fairweather recalled the name on the bracelet was "Sandy."

Some six or seven months after purchasing the jewelry and guns from Lankford,

Fairweather was at the Sheriff's Department for reasons unrelated to the instant case. Detective Miller asked if Fairweather knew about any jewelry. Fairweather reminded Det. Miller about their previous conversation and explained that the jewelry was still in the same place at his home. In response, Det. Miller went to Fairweather's home, photographed the jewelry, and took the entire jewelry box into custody.

On cross-examination, Fairweather was questioned about a statement he had given to Det. Miller:

DEFENSE COUNSEL: Okay. And you said that [Lankford] told you when you asked him straight up, "Are these items stolen?" and he told you, "No, they're not stolen."

FAIRWEATHER: Right.

DEFENSE COUNSEL: "I either got them out of Monroe County or I got them from somebody from Monroe County." Is that what [Lankford] said to you?

FAIRWEATHER: That's what he told me.

Nikki Markwell, Lankford's niece, also testified. Markwell went to school with the victim's daughter and was her best friend. Markwell stated that she and Lankford were living at her mother's home, about a mile away from the victim's home, when the burglary occurred. Markwell testified that "[Lankford] told [her] that he broke into [the victim's] house and there was nothing [Markwell] could do about it; if [Markwell] said anything, that [Lankford] would put it off on [her]." Lankford also told Markwell that he took the stolen property to Fairweather. Although Markwell gave her statement regarding the burglary eight months after the offense, she contacted the Sheriff's Department the day after Lankford admitted the crime to her.

Kristy Baucom, Markwell's sister and Lankford's other niece, also testified. She did not live with her sister and Lankford at the time of the offense. However, she recalled an argument between Lankford and Markwell in which Markwell threatened to turn Lankford in for the "robbery." In response, Baucom testified that Lankford said, "[I]f [Markwell] turned him in, that [Markwell] was gonna go down for it too, said because that [sic] [Markwell] had helped plan it, and that [Markwell] had got [sic] half the money out of it." Although Lankford had never been to the victim's home, he told Baucom the victim lived "down a long gravel road, [in] a trailer up on top of the hill." Lankford also told Baucom that Markwell told him how to break into the house. Baucom did not tell authorities about this conversation until eight months after the offense occurred.

Detective Gary Miller, a thirteen-year veteran with the McMinn County Sheriff's Department, investigated the burglary and theft of the victim's home. He stated he was called to the victim's home on March 29, 2005, by the homeowner's house sitter. A window was broken out on the front part of the victim's home. Detective Miller was able to reach the homeowner/victim by cellular phone and took an initial report which was officially filed eight to ten days later. While inside the home, Det. Miller observed a lot of glass pieces lying on the bed and in the floor. In checking for fingerprints, Det. Miller noted there were little dots in all of the prints, which indicated the perpetrator wore gloves. He also noted a shoe print on the bed but could not identify the size or type of shoe because the tread had been altered. There were also skid marks and dirt throughout the rest of the home. Because there was only one set of tracks going in and throughout the home, Det. Miller concluded that only one person entered the home.

On cross-examination, Det. Miller admitted the investigation was "cold" for more than a year after the offense. He testified the first "break" in the case was when the victim called and stated Markwell told her that Lankford burglarized her home. Detective Miller then took the statements of Markwell, Baucom, and Fairweather. He also confirmed that: (1) Fairweather called him before any report had been filed about the stolen jewelry and guns; (2) the jewelry was located and recovered from Fairweather's home; and (3) the victim identified the jewelry and confirmed it was hers. Finally, Det. Miller stated that the burglary and theft of the victim's home occurred in McMinn County.

Lankford did not present any proof at trial.

I. *Admissibility of Prior Aggravated Burglary Conviction.* Lankford argues the trial court erred when it determined that a prior aggravated burglary conviction was admissible for impeachment purposes. Specifically, Lankford claims unfair prejudice because the prior aggravated burglary conviction was identical to the charged offense. The State contends the aggravated burglary conviction was admissible because the trial court properly determined that the prior conviction was relevant to Lankford's credibility.

This Court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Waller,* 118 S.W.3d 368, 371 (Tenn.2003).

The admissibility of an accused's prior convictions is governed by Rule 609 of the Tennessee Rules of Evidence. Rule 609 permits the accused's credibility to be impeached by prior criminal convictions on cross-examination if certain conditions and procedures are satisfied. The conviction must be for a crime (1) punishable by death or incarceration in excess of one year, or (2) involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Generally, convictions that are ten years old or more cannot be used for purposes of impeachment. Tenn. R. Evid. 609(b). The State is also required to give reasonable written notice prior to trial of the particular convictions it intends to use to impeach the accused. Tenn. R. Evid. 609(a)(3). Before permitting the use of a prior conviction, the trial court must find that the probative value of the conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. *Id.* The trial court shall rule on the admissibility of the prior conviction before the accused testifies. *Id.* If the court rules that the prior conviction is admissible to impeach, there is no requirement that the accused testify at trial in order to later challenge the court's ruling on the admissibility of the prior conviction. Tenn. R. Evid. 609(a)(3).

"The mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness." *State v. Baker,* 956 S.W.2d 8, 15 (Tenn.Crim.App.1997) (citations omitted). However, our Supreme Court has recognized when the impeaching conviction is the same as the crime for which the accused is being tried the unfair prejudicial effect on the substantive issues greatly increases. *State v. Mixon,* 983 S.W.2d 661, 674 (Tenn.1999) (citations omitted). Therefore, trial courts should engage in a two prong analysis when weighing the probative value of the impeaching conviction against its prejudicial effect. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the

crime underlying the impeaching conviction." *State v. Farmer,* 841 S.W.2d 837, 839 (Tenn.Crim.App.1992), *appeal dismissed* (Tenn.1992).

Prior to trial, the State provided Lankford with notice of its intent to use seven prior felony convictions for impeachment purposes. In accordance with Rule 609, the trial court conducted a hearing and determined that only one of the seven convictions, a 1997 aggravated burglary, could be considered because the others were over ten years old. Defense counsel then argued the prior conviction was "more prejudicial to the defendant than it is probative to the state." In denying Lankford's motion, the trial court concluded, without any elaboration, that Lankford's impeaching conviction "goes to credibility."

■ Although the trial court's decision regarding the prior conviction may have been correct,[1] it failed to engage in an explicit analysis weighing the probative value of Lankford's conviction against any unfair prejudicial effect. *See Mixon,* 983 S.W.2d at 674 ("[T]rial courts should explain on the record how the impeaching conviction is relevant to the defendant's credibility."). Trial courts have been repeatedly instructed to "explicitly state their reasons for allowing or disallowing the admission of prior conviction evidence for the purpose of impeachment so the appellate courts may properly determine the rule has been followed in reaching the decision." *Long v. State,* 607 S.W.2d 482, 485 (Tenn.Crim.App.1980) (citation omitted). Here, as in *Mixon,* the on-the-record analysis is especially important because the impeaching conviction is the same as the charged offense which greatly increases its unfair prejudicial effect. *See Mixon,* 983 S.W.2d at 674.

■ This court has not previously addressed the appropriate standard of review where a trial court fails to comply with the procedural requirements of Rule 609 of the Tennessee Rules of Evidence. A procedural claim under Rule 609 challenges the process the trial court utilized to reach its decision, rather than the decision itself; however, a substantive claim under this rule challenges the trial court's weighing of the probative value against the unfair prejudicial effect as well as the resulting decision to admit or exclude the prior conviction.

■ Rule 404(b) of the Tennessee Rules of Evidence provides some guidance in determining the appropriate review of procedural errors under Rule 609. Both rules require the trial court to engage in an explicit analysis of the evidence before it is admitted. Under Rule 404(b), evidentiary matters are reviewed for an abuse of discretion only if the trial court has substantially complied with the procedural prerequisites of the rule. *State v. DuBose,* 953 S.W.2d 649, 652 (Tenn.1997). However, if the trial court did not substantially comply with the procedural requirements, then its decision is not entitled to deference by the court, and "the determination of admissibility will be made by the reviewing court on the evidence presented at the jury out hearing." *Id.* at 653. Thus, under Rule 404(b), the reviewing court is required to independently determine the admissibility of the evidence based upon the record and evidence presented at the jury-out hearing when procedural requirements were not

---

1. This Court has held that the offenses of burglary and theft are highly probative of credibility because these crimes involve dishonesty. *Baker,* 956 S.W.2d at 15 (internal citations and quotations omitted). Moreover, prior convictions for these felonies may be used to impeach an accused being tried for one or more of these offenses absent circumstances which require a different result. *Id.* (citations omitted).

met. Just as in Rule 404(b), we now conclude that if a trial court fails to comply with the procedural requirements of Rule 609, then the court's decision to admit or exclude a prior conviction is not entitled to deference by the reviewing court. When the trial court, as in this case, does not follow the procedural guidelines required by Rule 609, we must independently determine the admissibility of the prior impeaching conviction based on the evidence presented.

■ Here, the issue of whether the probative value of the impeaching conviction is substantially outweighed by its unfair prejudicial effect is a close question. As an initial matter, there was very little, if any, evidence or argument presented by either of the parties at the hearing. The trial court determined that only one of Lankford's seven prior convictions, a 1997 aggravated burglary, could be considered because the others were over ten years old. The trial court rightfully acknowledged, as we have repeatedly held, that convictions for aggravated burglary are probative of an accused's credibility. *See State v. Tune*, 872 S.W.2d 922, 927 (Tenn.Crim. App.1993) (citing *State v. Crank*, 721 S.W.2d 264, 266–67 (Tenn.Crim.App.1986), and *State v. Miller*, 737 S.W.2d 556, 560 (Tenn.Crim.App.1987)). Despite its admissibility under Rule 609's ten-year time frame, an eight-year-old conviction has an arguably tenuous relationship to Lankford's credibility. However, this is balanced by the fact that had Lankford chosen to testify, credibility would have been crucial to the State's case. An additional concern is the fact that the prior impeaching conviction is the same as the conviction for which Lankford is being tried, which may improperly suggest Lankford's propensity to commit the offense for which he was on trial. *See State v. Roberts*, 703 S.W.2d 146, 147 (Tenn.1986). We note

that one court has previously allowed a nine-year-old armed robbery impeaching conviction to be used during an armed robbery trial of the defendant, even though the crimes were substantially the same because the trial court's limiting instruction "provided an adequate safeguard against any potential prejudice possibly engendered by the admission of the prior conviction." *See United States v. Moore*, 917 F.2d 215, 234–35 (6th Cir.1990). We are confident that such a limiting instruction would have been given had Lankford testified. Aware that our independent review of the evidence is limited to the evidence presented at the Rule 609 hearing, we hold the probative value of Lankford's credibility is not substantially outweighed by the unfair prejudicial effect on the substantive issues. Accordingly, we conclude that the trial court properly admitted the Lankford's prior conviction for the purposes of impeachment.

■ Because the weighing of the probative value of the prior conviction against any unfair prejudicial effect was a close question in this case, we find it necessary in conducting our review to consider, even if admission of the prior conviction was error, whether "the error [ ] affirmatively or more probably than not affected the judgment to [Lankford's] prejudice." *Waller*, 118 S.W.3d at 374 (citations omitted). In making this determination, we are mindful of the Tennessee Supreme Court's recent discussion of Tennessee's harmless error doctrine which required appellate courts to primarily consider "the impact the error may reasonably be taken to have had on the jury's decision-making." *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn.2008). We further consider the "'theory of the defense' in order to determine whether the erroneous impeachment would have had an impact on the result of the trial." *State v. Thompson*, 36 S.W.3d

102, 112 (Tenn.Crim.App.2000) (citation omitted). "We glean the defense theory from the arguments of counsel, the presentation of evidence in the [appellant's] case-in-chief, and, when appropriate, from the tenor of cross-examination of state witnesses." *Id.*

In this case, Lankford elected not to make an offer of proof as to his intended testimony at trial.[2] Nor did Lankford present any evidence at trial or argument on appeal as to his intended testimony. We are also unable to glean anything from the opening or closing arguments because they were not included in the record.[3] At trial, there was no dispute that an aggravated burglary occurred or that property had been stolen from the victim. Lankford also did not dispute that he confessed to both of his nieces, and he elected to cross-examine them solely on their failure to immediately report the crime to authorities. He further implied that both nieces received money or jewelry from the burglary. Additionally, defense counsel cross-examined Fairweather about the date Fairweather actually saw Lankford with the stolen property. In doing so, Lankford acknowledged he possessed the stolen property but implied that it was almost nine months after the date of the offense. However, Detective Miller confirmed that Fairweather called about the stolen property before a report had even been filed.

▪ Finally, in Fairweather's statement to Detective Miller, Lankford denied that he knew the property was stolen and claimed someone else gave it to him. Unsatisfactorily explained possession of recently stolen goods, in light of the surrounding circumstances, permits an inference that the individual in possession stole the property or knew that it was stolen. *See, e.g., Bush v. State,* 541 S.W.2d 391, 394 (Tenn.1976); *State v. Anderson,* 738 S.W.2d 200, 202 (Tenn.Crim.App.1987). The jury may choose to apply the inference, even in the face of contradictory evidence or the defendant's contrary explanation. *State v. Land,* 681 S.W.2d 589, 591 (Tenn.Crim.App.1984); *see Bush,* 541 S.W.2d at 395.

Consequently, the jury heard Lankford's explanation of why he was in possession of the victim's property but chose not to believe it. Therefore, based on the record before us, we conclude Lankford was not prejudiced by the trial court's admission of this prior conviction. Accordingly, admission of Lankford's prior felony aggravated burglary conviction for impeachment purposes, if error, was harmless.

▪ **II.** *Sufficiency of the Evidence.* In challenging the sufficiency of evidence, Lankford argues the State failed to show that he was in possession of recently stolen property. The State argues the proof presented at trial supports the aggravated burglary conviction. We agree.

▪ The standard of review for challenges to the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (empha-

---

2. Although not required, when preserving a claim of an erroneous ruling on admissibility for review, an offer of proof may be the only way to demonstrate prejudice. *See State v. Galmore,* 994 S.W.2d 120, 125 (Tenn.1999).

3. It is the appellant's duty to include all transcripts "necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R.App. P. 24(b); *see also State v. Keen,* 996 S.W.2d 842, 843–44 (Tenn.Crim.App.1999).

sis in original) (citation omitted); Tenn. R.App. P. 13(e); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn.Crim.App.2003) (citations omitted). This court does not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655 (citations omitted). All factual issues raised by the evidence, questions concerning the credibility of the witnesses, and the weight and value of the evidence have been resolved by the trier of fact. *Id.* (citation omitted). This court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978), *superceded by statute on other grounds as stated in State v. Barone*, 852 S.W.2d 216, 218 (Tenn.1993).

In order to sustain Lankford's aggravated burglary conviction, the State was required to prove that he entered a habitation without the effective consent of the owner with the intent to commit a theft. T.C.A. §§ 39–14–402, –403 (2006).

Viewed in the light most favorable to the State, the proof fully supported Lankford's conviction for aggravated burglary. There was no dispute that Rawlins' home was burglarized. Photographs presented at trial confirmed the broken window and the disheveled condition of her home. Several items of value were missing and ultimately recovered at Fairweather's home. Fairweather testified that he bought the items from Lankford within a week of the burglary. Although Fairweather was not "100%" certain of the dates, Det. Miller verified that Fairweather had called about the stolen property before his office had even received the burglary report from the victim. The trial court properly instructed the jury as to the inference, if any, that could be drawn from Lankford's posses-

sion of recently stolen property. *See State v. Hamilton*, 628 S.W.2d 742, 746 (Tenn. Crim.App.1981). Finally, two of Lankford's nieces testified that he confessed to committing the burglary. Accordingly, the evidence was sufficient to support the conviction for aggravated burglary.

### Conclusion

We conclude, upon our independent review, that the State could use Lankford's prior felony aggravated burglary conviction for impeachment purposes. However, even if considered error, it was harmless. We further conclude that the evidence was sufficient to support Lankford's conviction for aggravated burglary. Accordingly, the judgment of the trial court is affirmed.