# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 28, 2010

## JERRY WAYNE LANKFORD v. STATE OF TENNESSEE

### Appeal from the Circuit Court for McMinn County
### No. 09-129     Carroll Ross, Judge

### No. E2010-00510-CCA-R3-PC - Filed March 28, 2011

The petitioner, Jerry Wayne Lankford, appeals the denial of his petition for post-conviction relief. He was convicted by a McMinn County jury of aggravated burglary, a Class C felony, and theft of property over $1,000, a Class D felony.[1] State v. Lankford, 298 S.W.3d 176, 178 (Tenn. Crim. App. 2008). The petitioner was sentenced as a Range III, persistent offender to twelve years for aggravated burglary and ten years for theft of property, to be served consecutively, for an effective sentence of twenty-two years in the Tennessee Department of Correction. Id. On appeal, the petitioner claims he received ineffective assistance of counsel. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Charles W. Pope, Jr., Athens, Tennessee, for the Defendant-Appellant, Jerry Wayne Lankford.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Robert Steve Bebb, District Attorney General; and Andre Freiberg, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The facts of the underlying convictions, as outlined by this court in the petitioner's direct appeal, are described below:

---

[1]The record does not include a copy of the judgment forms.

At trial, Sandy Rawlins testified that she lived at 363 County Road 189, Decatur, Tennessee. Her home was burglarized while she was on vacation in March of 2005. She returned home to find "[m]ud tracked through the house, a window broken, [and] the bedspread taken off [her] bed." She stated her jewelry box and five to six guns were missing from her home. The jury was shown photographs of Rawlins' home which were taken shortly after the burglary occurred. Rawlins spoke with Detective Gary Miller of the McMinn County Sheriff's Department and later made an inventory of all the items that were missing from her home. She was shown jewelry items at trial which she confirmed were taken from her home on the day of the burglary. Significantly, she identified two "old high school I.D. bracelets" with her name inscribed on them. Finally, although most of the stolen property was covered by her insurance, Rawlins estimated its value to be between five and six thousand dollars.

Frank Fairweather, Lankford's previous employer and acquaintance of thirty years, also testified. Fairweather stated that Lankford came to his home between 11:30 a.m. and 12:30 p.m. on March 29, 2005, because "[Lankford] had a bunch of guns and jewelry [Lankford] wanted to sell." Fairweather initially refused to deal with Lankford. Within a week of this meeting, Fairweather called and spoke with Det. Miller to see if anything Lankford had shown him had been reported stolen. At that time, Det. Miller had no such reports of stolen property. Consequently, the next day, Fairweather contacted Lankford and bought a jewelry box and four guns for $125.

Fairweather identified a photograph of the jewelry box and jewelry he purchased from Lankford at trial. It was the same jewelry and jewelry box previously identified by Rawlins as having been stolen from her home in the burglary. Regarding the jewelry inside the box, Fairweather stated:

> Well, I tell you the truth, I never really went through it. I started going through it one day, and I saw a little girl's name on some [sic], a bracelet and a ring and that, and I told my wife, I said, "Put that up. That belongs to some little kid and some day we'll find out who's got it, or who's missed it."

Fairweather recalled the name on the bracelet was "Sandy."

Some six or seven months after purchasing the jewelry and guns from Lankford, Fairweather was at the Sheriff's Department for reasons unrelated

to the instant case. Detective Miller asked if Fairweather knew about any jewelry. Fairweather reminded Det. Miller about their previous conversation and explained that the jewelry was still in the same place at his home. In response, Det. Miller went to Fairweather's home, photographed the jewelry, and took the entire jewelry box into custody.

On cross-examination, Fairweather was questioned about a statement he had given to Det. Miller:

> Defense Counsel: Okay. And you said that [Lankford] told you when you asked him straight up, "Are these items stolen?" and he told you, "No, they're not stolen."
>
> Fairweather: Right.
>
> Defense Counsel: "I either got them out of Monroe County or I got them from somebody from Monroe County." Is that what [Lankford] said to you?
>
> Fairweather: That's what he told me.

Nikki Markwell, Lankford's niece, also testified. Markwell went to school with the victim's daughter and was her best friend. Markwell stated that she and Lankford were living at her mother's home, about a mile away from the victim's home, when the burglary occurred. Markwell testified that "[Lankford] told [her] that he broke into [the victim's] house and there was nothing [Markwell] could do about it; if [Markwell] said anything, that [Lankford] would put it off on [her]." Lankford also told Markwell that he took the stolen property to Fairweather. Although Markwell gave her statement regarding the burglary eight months after the offense, she contacted the Sheriff's Department the day after Lankford admitted the crime to her.

Kristy Baucom, Markwell's sister and Lankford's other niece, also testified. She did not live with her sister and Lankford at the time of the offense. However, she recalled an argument between Lankford and Markwell in which Markwell threatened to turn Lankford in for the "robbery." In response, Baucom testified that Lankford said, "[I]f [Markwell] turned him in, that [Markwell] was gonna go down for it too, said because that [sic] [Markwell] had helped plan it, and that [Markwell] had got [sic] half the money out of it." Although Lankford had never been to the victim's home, he

told Baucom the victim lived "down a long gravel road, [in] a trailer up on top of the hill." Lankford also told Baucom that Markwell told him how to break into the house. Baucom did not tell authorities about this conversation until eight months after the offense occurred.

Detective Gary Miller, a thirteen-year veteran with the McMinn County Sheriff's Department, investigated the burglary and theft of the victim's home. He stated he was called to the victim's home on March 29, 2005, by the homeowner's house sitter. A window was broken out on the front part of the victim's home. Detective Miller was able to reach the homeowner/victim by cellular phone and took an initial report which was officially filed eight to ten days later. While inside the home, Det. Miller observed a lot of glass pieces lying on the bed and in the floor. In checking for fingerprints, Det. Miller noted there were little dots in all of the prints, which indicated the perpetrator wore gloves. He also noted a shoe print on the bed but could not identify the size or type of shoe because the tread had been altered. There were also skid marks and dirt throughout the rest of the home. Because there was only one set of tracks going in and throughout the home, Det. Miller concluded that only one person entered the home.

On cross-examination, Det. Miller admitted the investigation was "cold" for more than a year after the offense. He testified the first "break" in the case was when the victim called and stated Markwell told her that Lankford burglarized her home. Detective Miller then took the statements of Markwell, Baucom, and Fairweather. He also confirmed that: (1) Fairweather called him before any report had been filed about the stolen jewelry and guns; (2) the jewelry was located and recovered from Fairweather's home; and (3) the victim identified the jewelry and confirmed it was hers. Finally, Det. Miller stated that the burglary and theft of the victim's home occurred in McMinn County.

Lankford did not present any proof at trial.

Lankford, 298 S.W.3d at 178-80.

The jury convicted the petitioner of aggravated burglary and theft of property over $1,000. Id. at 178. He was sentenced to consecutive terms of twelve years for aggravated burglary and ten years for theft of property. Id. On appeal, the petitioner challenged the sufficiency of the evidence and the admissibility of a prior felony conviction. Id. This court

-4-

determined that neither claim had merit. Id. at 184. It affirmed the judgments of the trial court. Id.

The petitioner subsequently filed a pro se petition for post-conviction relief. He was appointed counsel, and an amended petition was filed. The amended petition alleged that the petitioner received ineffective assistance of counsel at trial and at sentencing. Its primary claim was that defense counsel failed to contact potential character witnesses. The amended petition also argued that the petitioner's mental health should have been raised as a defense. Lastly, it claimed defense counsel should have argued at sentencing that the offenses did not cause or threaten serious bodily injury.

**Post-Conviction Hearing**. The petitioner testified that defense counsel visited him in jail before trial. He told defense counsel about "a guy" who could testify on his behalf. The petitioner said he did not know how to contact this potential witness. At the hearing, the petitioner did not state the potential witness's name, and he failed to set forth the substance of his testimony. He claimed he gave defense counsel the names of two other witnesses: "Tammy Buckner and her friend over there on County Road 188." The petitioner said he told defense counsel where these witnesses were, but defense counsel never obtained a subpoena.

The petitioner said he chose not to testify at trial upon the advice of defense counsel. He was told that the prosecution could use his prior convictions for impeachment purposes. The petitioner claimed defense counsel failed to adequately investigate his case. He again asserted that defense counsel should have contacted several witnesses, including Buckner. The petitioner stated, "I'd worked for [Buckner] and I'd been all through her house and I ain't never touched nothing in her house, the whole time I was out there." He acknowledged that Buckner did not know anything about the offenses. The petitioner said he provided a witness list to defense counsel; however, none of these witnesses were contacted. He believed his mental state should have been an issue at trial. The petitioner claimed his sister, Betty Patterson, could have testified about his mental health. He testified that he met with defense counsel twice before trial, once at the jail and once at the courthouse. The petitioner had difficulty contacting defense counsel while in jail. He wished that defense counsel had impeached his two nieces, Nikki Markwell and Kristy Baucom, who testified for the prosecution. The petitioner said both witnesses presented false testimony.

On cross-examination, the State questioned the petitioner about his prior convictions. The petitioner again discussed defense counsel's failure to contact potential witnesses. He testified that defense counsel should have contacted a man in Bradley County. The petitioner could not recall the man's name; however, he claimed to have worked for the man. The petitioner stated, "I had been working for him when this burglary was supposed to have took place[.]" The man in Bradley County would have also testified that the petitioner was a

trustworthy employee. The petitioner acknowledged that the man knew nothing about the offenses. The petitioner said he was told by defense counsel that if the character witnesses testified, the prosecution could introduce evidence of his prior convictions. The petitioner denied that he met with defense counsel five times before trial. The petitioner said he wanted a jury trial because he was innocent. The petitioner was shown a letter that he wrote to defense counsel after sentencing. The letter thanked defense counsel for his work on the case. The petitioner conceded in the letter that he was guilty of theft. He maintained that he was innocent of aggravated burglary.

Patterson testified that she was the petitioner's sister. She was present during part of the trial. Patterson said she told defense counsel that she was concerned about the petitioner's mental state. She believed that he had "a mental problem" and needed help. Patterson acknowledged that she was not a medical professional. She believed that the petitioner had mental health problems based on his persistent criminal conduct. Patterson said defense counsel asked her if she wanted to testify at trial; however, she declined. She could not recall why she decided not to testify. Patterson did testify at the sentencing hearing.

Defense counsel testified that he represented the petitioner at trial, at sentencing, and on direct appeal before the Court of Criminal Appeals. He denied that the petitioner mentioned anything about potential witnesses. Defense counsel stated:

> The only witnesses that I discussed with [the petitioner] were the witnesses that were identified in the State's discovery. [The petitioner] never informed me of an individual in Bradley County, or the other person that he mentioned. He did not–I've checked my file. There are no notes of anything like that.

Defense counsel testified that he spoke with Patterson on the morning of the trial. She suggested that the petitioner might have mental health problems. Defense counsel said he alerted the trial court that Patterson had questioned the petitioner's mental state; however, he chose not to ask for a mental evaluation. He stated that the petitioner gave no indication that he was incompetent or insane. Defense counsel testified that he met with the petitioner at least five times before trial. He reviewed his notes and described the substance of these meetings. Defense counsel stated that he asked Patterson if she wanted to testify at trial; however, she declined. He recalled the petitioner stating that his two nieces, Markwell and Baucom, presented false testimony. Defense counsel asked the petitioner to explain how their testimony was false, but he was unable to provide a coherent explanation.

Defense counsel could not recall whether he raised the absence of physical injury as a mitigating factor at sentencing. He acknowledged that this factor should have been raised. Defense counsel said the petitioner rejected two plea offers. Defense counsel filed a motion in limine for the petitioner's prior convictions. The trial court found that evidence of several aggravated burglaries was admissible. Defense counsel said the petitioner claimed he was innocent and wanted to go to trial. The petitioner initially wanted to testify; however, he changed his mind during trial.

The post-conviction court denied the petitioner relief by written order. It first addressed the claim that defense counsel should have called several witnesses to testify. The court noted that these character witnesses were not identified, other than Tammy Buckner, and had no knowledge of the facts of the case. It credited defense counsel's testimony that he did not receive a witness list from the petitioner. The court also stated:

> Petitioner . . . testified that trial counsel had advised against using such character witnesses for fear that such testimony would open the door to the state for many of his prior convictions that had been ruled inadmissible by the court for impeachment purposes should the defendant have taken the stand.

Next, the court found no support for the petitioner's claim that his mental health should have been raised as a defense. It reasoned that the petitioner's claim was based entirely on the statement made by Patterson and not any medical evidence. The court pointed out that Patterson declined the opportunity to testify at trial. Lastly, the court determined that defense counsel was not obligated to raise any mitigating factors at sentencing. It addressed the failure to argue that the offenses did not cause or threaten serious bodily injury. The court stated:

> There was no proof at trial by the petitioner that he knew at the time of the burglary that the occupants of the house were not at home. Any breaking and entering into the residence of another person poses the inherent threat of injury should the intruder be discovered either by someone already in the home or by someone returning home during the commission of the crime. This court, absent strong law to the contrary, is not inclined to find that lack of committing personal injury during the commission of a home invasion is a 'mitigating factor' at a sentencing hearing.

The court referred to the presentence report, which concluded that no mitigating factors were present. Regarding prejudice, the court found that the proof against the petitioner was "overwhelming."

The petitioner appealed the decision of the post-conviction court by filing a timely notice of appeal.

## ANALYSIS

The petitioner claims the post-conviction court erred in denying his petition because he received ineffective assistance of counsel. He argues that defense counsel failed to adequately prepare his defense. Specifically, the petitioner contends defense counsel should have contacted several possible witnesses and inquired about his mental state. He generally asserts that defense counsel "failed to adequately prepare for trial by insufficiently interviewing and consulting with the client regarding issues pertinent to his case." The petitioner also alleges, without additional argument, that defense counsel should have contested the applicability of sentencing factors. In response, the State argues that the post-conviction court properly denied the petitioner relief. The State claims the petitioner did not prove deficient performance or prejudice. Upon review, we agree with the State.

**Standard of Review**. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation marks and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn.

1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

In viewing the record, the petitioner has not shown that defense counsel's performance was deficient. The bulk of the post-conviction hearing addressed defense counsel's failure to contact three witnesses: Tammy Buckner, "her friend over there on Country Road 188," and a man from Bradley County. The post-conviction court credited defense counsel's testimony that he did not receive information about these witnesses before trial. As stated above, this court is not permitted to second-guess the post-conviction court's findings regarding witness credibility. See Vaughn, 202 S.W.3d at 115. Without information about these potential witnesses, defense counsel could not be expected to contact them. None of the witnesses had any connection to the case, other than the man from Bradley County who may have provided an alibi. The petitioner acknowledged that he did not know the name of the man from Bradley County or how to contact him. Defense counsel was not ineffective because he failed to contact these witnesses. Furthermore, the petitioner has failed to show prejudice or deficient performance because the persons mentioned were not called to testify at the evidentiary hearing. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Finally, we see no support for the claim that defense counsel should have investigated the petitioner's mental state. The post-conviction hearing afforded the petitioner the opportunity to present proof of his lack of mental capacity. The petitioner failed to present any medical evidence. He relied exclusively on the opinion of Patterson who testified that the petitioner must have mental problems based on his persistent criminal behavior. The petitioner presented no evidence that he lacked the mental capacity to commit the offenses; therefore, the petitioner failed to show that defense counsel was deficient for failing to investigate this issue.

The petitioner also contends that defense counsel should have contested the sentencing factors at the sentencing hearing. The argument in his brief is limited to the following assertion: "trial counsel failed to present any mitigating factors or argue against the enhancement factors." Based on the testimony at the post-conviction hearing, we presume the petitioner is referring to the mitigating factor of whether the petitioner caused or threatened serious bodily injury. T.C.A. § 40-35-113(1). At the post-conviction hearing, defense counsel could not recall whether he contested this issue. Without a transcript of the sentencing hearing, it is unclear what arguments defense counsel made at the sentencing hearing. The appellant has a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." T.R.A.P. 24(b); see also State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Because the petitioner failed to include a transcript of the sentencing hearing, we are precluded from considering this issue. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988) (concluding that this court is precluded from considering an issue if the record does not contain parts of the record upon which a party relies).

Lastly, the petitioner asserts that defense counsel should have filed a motion to reduce bond. The petitioner has not shown that a motion to reduce bond would have been granted, or that a successful motion would have affected the outcome of the trial. This claim is without merit. Accordingly, the petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE