# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2014

## STATE OF TENNESSEE v. JEREMY LENIEL MIDDLEBROOKS

**Appeal from the Circuit Court for Tipton County**
**No. 7567     Joseph H. Walker, III, Judge**

---

**No. W2014-00469-CCA-R3-CD  - Filed January 15, 2015**

---

The Defendant, Jeremy Leniel Middlebrooks, was indicted for two counts of aggravated assault, reckless endangerment, and being a felon in possession of a firearm. See Tenn. Code Ann. §§ 39-13-102, -13-103, -17-1307. Prior to trial, the State dismissed one of the counts of aggravated assault. Following a bifurcated jury trial, the Defendant was convicted of the lesser-included offenses of facilitation of aggravated assault and facilitation of reckless endangerment. See Tenn. Code Ann. § 39-11-403. The Defendant then pled guilty to being a felon in possession of a firearm while the jury was deliberating during the second phase of the trial. The trial court imposed an effective sentence of five years. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to sustain his convictions for facilitation of aggravated assault and facilitation of reckless endangerment; and (2) that the trial court erred by ruling that the Defendant's prior conviction for attempted aggravated burglary could be used to impeach the Defendant if he chose to testify at trial. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE, JJ., joined.

Charles A. Brasfield, Covington, Tennessee (at trial); and Lyle A. Jones, Covington, Tennessee (on appeal), for the appellant, Jeremy Leniel Middlebrooks.

Herbert H. Slatery, III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

Kenitha McCain testified that on the evening of October 12, 2012, she had a family barbeque at her house in Covington, Tennessee. Ms. McCain testified that her friend, Eddie Muex, Sr., and his son, Eddie Muex, Jr., were both guests at the party. According to Ms. McCain, she was standing in her yard when a woman named Catrina Davis "pull[ed] up with several people in [her] car." Ms. Davis got out of the car, walked up to Mr. Muex's son, and started "fussing with [him] about something or another." Ms. McCain testified that two men then got out of the backseat of Ms. Davis's car and walked up to Ms. Davis and Mr. Muex's son.

Ms. McCain identified the Defendant as one of the men that got out of Ms. Davis's car, testifying that he got out on the driver's side of the car. Ms. McCain further testified that the Defendant and the other man each had a gun in their hand. Ms. McCain recalled that the men said, "Let's get this. Let's kill him." Ms. McCain testified that she heard the Defendant say, "Lets' kill this M-F [sic]." According to Ms. McCain, Mr. Muex got between the men and his son to protect him. Ms. McCain and several other people called 911 to report the altercation.

Ms. McCain testified that as people started to call 911, the Defendant and the other man walked back to Ms. Davis's car. Ms. Davis told the men not to get in the car, and they started to run away. As they were running away, the Defendant turned around and shot at the crowd and up in the air. Ms. McCain testified that her guests were ducking for cover and running away as the shots were fired. When asked if she was afraid, Ms. McCain testified that she was afraid when the men "pulled out those guns and said, 'Let's kill this M-F [sic],' and when they ran up the street and shot."

Mr. Muex testified that he was at Ms. McCain's house with his son for a barbeque on October 12, 2012. Mr. Muex testified that there were between twenty and thirty people at the house that night, including infants and "little kids." According to Mr. Muex, Ms. Davis drove up to the house and got out of her car. Ms. Davis walked up to Mr. Muex's son and "said a few words" to him. Mr. Muex testified that Ms. Davis "was kind of upset about something." Mr. Muex testified that he saw the Defendant and another man get out of the backseat of Ms. Davis's car.

Mr. Muex testified that he saw that one of the men had a gun but that he could not see if the Defendant had a gun. When he saw the gun, Mr. Muex said "something about the gun" to his son and made him back up. Mr. Muex recalled that when Ms. McCain saw the gun, she "hollered about calling the police." When Ms. McCain said that, the Defendant and the other man started to walk away. Mr. Muex testified that as they were walking away, "they

turned around and . . . just started shooting." Mr. Muex testified that he heard "[t]wo different shots" and saw "the fire coming from the gun." According to Mr. Muex, the men then ran away and were gone by the time the police arrived.

Officers from the Covington Police Department arrived at Ms. McCain's house at approximately 8:00 p.m. that night. They found a car, with Ms. Davis in the driver's seat, "two driveways down" from Ms. McCain's house. In the center of the floorboard of the backseat, officers found a box of .380 ammunition "with some rounds missing out of the box." The officers also found three .380 spent shell casings, grouped together, in an area of the street where the witnesses had told them the men were when they were shooting. The gun used to shoot at Ms. McCain and her guests was never recovered.

Based upon the foregoing, the jury convicted the Defendant of the lesser-included offenses of facilitation of aggravated assault and facilitation of reckless endangerment. The Defendant also pled guilty to being a felon in possession of a firearm. The trial court sentenced the Defendant as a Range II, multiple offender to five years for the facilitation of aggravated assault conviction, four years for the felon in possession of a firearm conviction, and eleven months and twenty-nine days for the facilitation of reckless endangerment conviction. The trial court ordered the Defendant's sentences to be served concurrently for an effective sentence of five years.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his convictions for facilitation of aggravated assault and facilitation of reckless endangerment. The Defendant argues that the jury rejected Ms. McCain's testimony that the Defendant had a gun and fired into the crowd. The Defendant further argues that there was no evidence the Defendant knew that the other man "was going to commit the offense of . . . aggravated assault." The Defendant also argues that there was no evidence "that anyone was within a specific zone of danger" when the gun was fired. The State responds that the evidence was sufficient to sustain the Defendant's convictions.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of

-3-

the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)) (quotation marks omitted).

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

As relevant here, aggravated assault is an act that intentionally or knowingly "causes another to reasonably fear imminent bodily injury" involving "the use or display of a deadly weapon." Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(A)(iii). Reckless endangerment occurs when a person "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). Facilitation of a felony occurs when a person, "knowing that another intends to commit a

-4-

specific felony, but without the intent required for criminal responsibility[,] . . . knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403.

Viewing the evidence in the light most favorable to the State, Ms. McCain was in her yard having a barbeque for twenty to thirty people when Ms. Davis pulled up, got out of her car, and started a confrontation with Mr. Meux's son. The Defendant and another man got out of the backseat of the car and approached Ms. Davis and Mr. Meux's son. At least one of the men had a gun in his hand. The men said, "Let's get this. Let's kill him." Ms. McCain testified that the Defendant said, "Lets' kill this M-F [sic]." Ms. McCain testified that this caused her to be afraid and that she called 911. The men then attempted to flee because several people at the party were calling 911. As they were running away, one of the men turned around and shot into the crowd, which included infants and "little kids." The men then ran away. When police arrived, they found three spent .380 shell casings in the street and a box of .380 ammunition "with some rounds missing out of the box" in the backseat of Ms. Davis's car.

The evidence was sufficient to show that the Defendant knew an aggravated assault was about to be committed and substantially assisted in the commission of the offense. Ms. Davis left her car and started an altercation with Mr. Meux's son. The Defendant and another man exited the backseat of Ms. Davis's car, where there was a box of ammunition "with some rounds missing out of the box," and approached the two. At least one of the men had a gun in his hand. The Defendant then said, "Lets' kill this M-F [sic.]." At that point in time, Ms. McCain testified she was nearby and afraid. The men, displaying a deadly weapon, caused Ms. McCain to reasonably fear imminent bodily injury. The men then fled as Ms. McCain and others began to call the police. After being encouraged by the Defendant to "kill this M-F [sic]," at least one of the men turned around and fired into a crowd of twenty to thirty people, placing several people in imminent danger of death or serious bodily injury. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's convictions.

## II. Impeachment by Prior Conviction

The Defendant contends that the trial court erred by ruling that his prior conviction for attempted aggravated burglary could be used to impeach him if he chose to testify at trial. The Defendant argues that evidence of his prior conviction was improper pursuant to Tennessee Rule of Evidence 404(b) because it "was not probative to the conduct at issue, and the danger of unfair prejudice was present." The State responds that it did not attempt to introduce the prior conviction as evidence of the Defendant's character but rather sought to

use it for impeachment purposes pursuant to Tennessee Rule of Evidence 609. The State further responds that there was no error in the trial court's ruling.

Prior to trial, the State filed a "notice of convictions for impeachment purposes" listing the Defendant's prior attempted aggravated burglary conviction. During a jury-out hearing, the State informed the trial court that if the Defendant chose to testify, it would seek to impeach him with that conviction. The Defendant objected on the grounds that "it would be overly prejudicial and the probative value would be outweighed by the prejudicial effect." The trial court overruled the Defendant's objection, finding that the prior conviction was "dissimilar to the case on trial," that it was probative as to credibility, and "should not be unduly prejudicial." The Defendant ultimately decided not to testify at trial, and no evidence of his prior conviction was introduced during the first phase of his jury trial.

We agree with the State that Tennessee Rule of Evidence 404(b) is not at issue in this case. Rule 609, which deals with impeachment by evidence of a prior criminal conviction, is the applicable rule. Rule 609 provides that "evidence that [a] witness has been convicted of a crime may be admitted" for the purpose of attacking the credibility of the witness. Tenn. R. Evid. 609(a). The crime must be "punishable by death or imprisonment in excess of one year" or "have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). When the witness is the accused in a criminal prosecution, Rule 609 provides as follows:

> . . . [T]he State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a)(3). The prior conviction must also have occurred within the past ten years. Tenn. R. Evid. 609(b). We review a trial court's ruling on Rule 609 evidence under an abuse of discretion standard. State v. Lankford, 298 S.W.3d 176, 180 (Tenn. Crim. App. 2008).

Here, the State provided a proper written notice of the impeaching conviction before trial, and the trial court held a jury-out hearing on the conviction's probative value. It is well-established that the offense of burglary is "highly probative of credibility" because it involves dishonesty. Lankford, 298 S.W.3d at 181 n.1. In fact, a prior conviction for burglary is so probative of credibility that it "may be used to impeach an accused being tried for" on a later,

different burglary charge "absent circumstances which require a different result." <u>State v. Baker</u>, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997). The offenses at issue here, aggravated assault and reckless endangerment, are not similar to attempted aggravated burglary. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the Defendant could be impeached by proof of his prior conviction for attempted aggravated burglary.

<u>CONCLUSION</u>

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE