IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville July 25, 2012

**STATE OF TENNESSEE v. TIMOTHY W. FORD**

**Appeal from the Criminal Court for DeKalb County**
**No. 2010-CR-190      David A. Patterson, Judge**

**No. M2011-02414-CCA-R3-CD - Filed September 7, 2012**

Appellant, Timothy W. Ford, was convicted by a DeKalb County jury of the initiation of a process to manufacture methamphetamine, a Class B felony. The trial court imposed a sentence of eleven years and six months. Appellant challenges his conviction and sentence for the following reasons: (1) the evidence was insufficient to sustain the conviction; (2) the trial court erred in denying his motion in limine to exclude evidence of his prior conviction; and (3) the sentence was excessive because the trial court failed to give ample weight to the mitigation evidence. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and ROBERT W. WEDEMEYER, JJ., joined.

James M. Judkins, Smithville, Tennessee, for the appellant, Timothy W. Ford.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall A. York, District Attorney General; and Greg Strong and Phillip Hatch, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

A. Facts from Trial

The State called Jeremy Taylor, a detective with the Dekalb County Sheriff's Department, as its first witness. At the time of the offense, he was a patrol deputy. He and

Deputy Stephen Barrett responded to a call on May 21, 2010, about a possible methamphetamine laboratory ("meth lab") in operation on Dry Creek Road at the "swimming hole." Because the area was a public place where families camped and people swam, deputies patrolled the area frequently.

When Detective Taylor arrived on the scene, he observed three people: appellant, Terry Daniels, and Lydia Judkins. Upon arrival, Detective Taylor immediately noted that Daniels and Judkins were in the weeds, engaging in sexual intercourse. Deputy Barrett stayed with them while Detective Taylor walked toward a truck that was parked in the area. Upon reaching the truck, he heard glass breaking and saw appellant "hunkered over" in another weeded area. When Detective Taylor called appellant's name, appellant "jumped up." Detective Taylor removed appellant from the weeded area and subsequently found the components for a meth lab, including three bottles, rubber tubing, drain cleaner, Coleman fuel, ziplock bags, cold packs, and Mason jars containing a bi-layered liquid substance. Detective Taylor ascertained that Daniels owned the truck and obtained consent to search it. He found an open toolbox that contained a pipe cutter, funnels, rubbing alcohol, coffee filters, and black electrical tape. He also seized distilled water, eight rubber gloves, lithium batteries, a flashlight, a ceramic mug, and salt.

Detective Taylor explained that the cold packs were the type that one would crush in order to activate the cooling agent. In his experience, meth lab operators use the packs for the ammonium nitrate contained inside. While at the scene, Detective Taylor called the detective on duty who was "meth certified." When he arrived, the two detectives gathered all of the components and photographed them. Through his training and experience, Detective Taylor believed that the items he seized were precursors used to process and manufacture methamphetamine. Detective Taylor arrested all three individuals and they were transported to jail. When he searched appellant, he found a baggie with crushed pseudoephedrine in his pocket.

The State next called DeKalb County Deputy Stephen Barrett as a witness. He testified that when he and Detective Taylor arrived at the scene, he observed Daniels and Judkins having sexual intercourse in a weeded area. The officers alerted Daniels and Judkins to their presence, after which the two dressed themselves and came forward. Deputy Barrett stayed with them as Detective Taylor moved toward the parked truck. Deputy Barrett did not observe any of the items found in Daniels's truck or the area where appellant was located. He did not transport anyone to jail; he remained on the scene.

Sheriff Patrick Ray testified as an expert in the manufacture of methamphetamine and the detection of meth labs based on his education, training, and experience. Sheriff Ray reviewed the photographs of the components seized during appellant's arrest and testified

that they composed a meth lab. He testified that the ingredients found by the officers were indicative of the "one pot" or "shake and bake" method of manufacturing methamphetamine. The method was popular because a lab using this method would fit into a backpack, and manufacture could be completed within four to five hours.

Sheriff Ray testified that based on his review of the evidence, the process of manufacturing methamphetamine had begun. His opinion was based on the bi-layered fluid, which he attributed to a stage in the process during which pseudoephedrine would be added. He testified pseudoephedrine is not commercially available in crushed form. He further stated that the manufacture of methamphetamine is a dangerous process because some of the chemicals used are highly flammable. The process also creates poisonous gasses, such as methane gas, which is odorless and colorless. Because many of the components are corrosive or flammable, a hazardous materials team dismantled the lab and disposed of the components. For that reason, the State presented photographs only, and no physical evidence was available at trial.

Appellant testified on his own behalf. He explained to the jury that he had two prior convictions, an automobile burglary conviction from 1990 and a theft conviction from 2006.[1] He testified that on the day in question, he rode to the swimming hole at Dry Creek with Daniels and learned upon arrival that Daniels had a meth lab in his truck. According to appellant, his discovery caught him off guard and made him feel very uncomfortable. When Daniels and Judkins left the area where the truck was parked, appellant became stressed about the meth lab and began moving the products into a weeded area. He was nervous because he "was sitting on a meth lab and [ ] was the only one around." Appellant testified that Daniels showed him the pseudoephedrine in the cab of the truck, and appellant grabbed it to dispose of it. He told the jury that he exercised poor judgment by not simply leaving the area and hitchhiking back to town and that he believed that by relocating the components, he would be "okay."

On cross-examination, appellant admitted he had used meth on the day of his arrest and two days earlier. He testified that he was homeless at the time and that Daniels gave him the meth because they had been friends for twenty years.

B. Facts from Sentencing

Byron Houston, a probation and parole officer with the State of Tennessee Board of Probation and Parole, prepared the presentence report for the court. He testified that he

---

[1] Appellant testified his theft conviction occurred in 2006. For clarification, the offense occurred in 2006, but the conviction was not entered until 2007.

found three felony convictions in appellant's criminal history, including two automobile burglary convictions from 1990[2] and a 2007 conviction for theft of property over $1,000. Appellant was revoked from probation on the felony theft conviction. Mr. Houston further testified appellant had thirty-five misdemeanor convictions on his record. There were also three pending charges against appellant. The presentence report contained appellant's statement, which indicated that he had a drug addiction and was making meth to get high. The State asked the trial court to find enhancement factor number one, that appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. *See* Tenn. Code Ann. § 40-35-114 (1) (2010).

Appellant introduced a mental health report as an exhibit at the sentencing hearing. Based on the report, he argued the existence of the mitigating factor that he suffered from a mental condition that significantly reduced his culpability. He further argued that his mental illness, coupled with substance abuse, further reduced his culpability. Appellant also urged the trial court to find as a mitigating factor that his conduct neither caused nor threatened bodily injury and that he played a minor role in the commission of the offense. *See* Tenn. Code Ann. § 40-35-113 (1), (4), (8) (2010).

The trial court determined that appellant should be sentenced as a Range I standard offender and noted that the range of punishment for a Class B felony is eight to twelve years. The trial court applied enhancement factor number one, finding the existence of numerous felony and misdemeanor convictions as well as incidents of criminal behavior and giving great weight to appellant's felony convictions. The court also found that enhancement factor number eight was relevant because appellant had failed to comply with the conditions of a sentence involving release into the community, to which the court also gave great weight. *See* Tenn. Code Ann. § 40-35-114 (8) (2010). The trial court considered as mitigation appellant's mental health history but gave it little weight.

The trial court considered the evidence received at trial and at the sentencing hearing, the presentence report, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, the evidence and information regarding enhancing and mitigating factors, statistical information provided by the Administrative Office of the Courts, and any statements made by appellant. Giving great weight to the enhancement factors and little weight to the mitigating factors, the trial court enhanced appellant's sentence to eleven years and six months to be served in the Tennessee Department of Correction.

---

[2] The two automobile burglary offenses were committed within a twenty-four period. Thus, only one automobile burglary conviction is addressed in the notice of enhanced punishment. Tenn. Code Ann. § 40-35-108(b)(4) (2010).

## II. Analysis

### A. Sufficiency of the Evidence

Appellant argues that the convicting evidence was insufficient to sustain a conviction for initiation of a process intended to result in the manufacture of methamphetamine. The State contends that the evidence was sufficient to support the conviction beyond a reasonable doubt. We agree with the State.

The standard for appellate review of a claim of insufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Tennessee Code Annotated section 39-17-435 provides the elements of the offense of initiation of a process intended to result in the manufacture of methamphetamine:

(a)    It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.

(b)    It shall not be a defense to a violation of this section that the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed.

(c)    For purposes of this section, "initiates" means to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation.

Viewing the evidence in the light most favorable to the State, the jury had before it sufficient evidence by which to find appellant guilty. Detective Taylor testified that he apprehended appellant in the immediate proximity of several precursor items. Sheriff Ray testified that the cold packs had been altered by placing black tape around them. Detective Taylor testified that appellant possessed crushed pseudoephedrine, and Sheriff Ray testified that the drug was not available in crushed form. Sheriff Ray testified that substances had been combined in the Mason jar to create the bi-layered fluid and opined that the process of manufacturing methamphetamine had begun. Thus, a reasonable trier of fact could have found appellant guilty of initiating a process to manufacture methamphetamine. Appellant's argument that the evidence was insufficient is without merit.

### B. Trial Court's Denial of Appellant's Motion in Limine to Exclude Evidence of Prior Conviction

Appellant contends that the trial court erred in denying his motion in limine seeking to exclude evidence of his prior conviction. The State argues that the trial court properly exercised its discretion. We agree with the State.

We review a trial court's ruling on the admissibility of prior convictions for impeachment purposes for abuse of discretion. *State v. Lankford*, 298 S.W.3d 176, 180 (Tenn. Crim. App. 2008); *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Rule 609 of the Tennessee Rules of Evidence governs the use of prior convictions for impeachment evidence. The rule states, in part:

(a)(3)  If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

*See also State v. Alvertis Boyd*, No. W2010-01513-CCA-R3-CD, 2011 WL 2586811, at *4 (Tenn. Crim. App. July 1, 2011), *perm. app. denied* (Tenn. Nov. 16, 2011).

In this case, the State gave the required written notice under Tennessee Rule of Evidence 609(a)(3) that it intended to impeach appellant with his 2007 conviction for theft of property. The trial court determined that the conviction was admissible prior to appellant's taking the stand in his own defense, as required by the rule. The trial court found that the conviction was probative of appellant's credibility and was therefore admissible as impeaching evidence. In so finding, the court stated that the probative value outweighed the prejudicial effect.

Because the trial court followed all procedural requirements, the sole issue for our determination is whether the trial court abused its discretion in allowing appellant to be impeached with the felony conviction. This court has previously held that the offense of theft is a crime involving dishonesty and is therefore highly probative of credibility. *Lankford*, 298 S.W.3d at 181 n.1 (citing *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997)). Appellant's prior conviction is not similar to the offense for which he was tried and convicted in this case. *See id.* at 181 (citing *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999)) (when the prior conviction is the same as the crime for which the accused is on trial, the unfair prejudicial effect on the substantive issues greatly increases). The trial court followed the procedure set forth by Rule 609 of the Tennessee Rules of Evidence. We find that the trial court did not abuse its discretion in permitting the State to impeach appellant with this prior theft conviction.

For clarity, we must take note that the State's notice of intent to impeach appellant with a prior conviction contained notice of only the 2007 theft conviction. Appellant's motion in limine contained a blanket statement asking the trial court to prohibit the introduction of any of his past convictions. The trial court's hearing and subsequent ruling on appellant's motion in limine addressed only the 2007 theft conviction. However, during

appellant's direct examination, he volunteered to the jury that he had been convicted of not only the 2007 theft charge, but also a 1996 charge of burglary of an automobile. We emphasize that the trial court's ruling on the motion in limine did not address the admissibility of the 1996 conviction. Thus, our review of the trial court's ruling is limited to its ruling on the 2007 theft charge.

## C. Propriety of Appellant's Sentence

Appellant simply states that in sentencing him to eleven years and six months, "the trial court erred in not giving enough weight to Defendant's mental health history." He cites no authority to support the proposition that the trial court erred in its weighing of enhancing and mitigating factors.

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure states that an appellant's brief shall contain the following with respect to an argument:

(A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a)(7)(A)-(B). Moreover, Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Appellant cited the sentencing guidelines but failed to cite the standard of review or any authority to support his position. The sentencing issue is waived. Nonetheless, to facilitate any further appellate review, we will address the substance of appellant's argument.

When an accused challenges the length and manner of service of a sentence, this court conducts a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2010). We condition this presumption upon "the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We do not apply the presumption to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court predicated upon uncontroverted facts. *State v. Butler*, 900 S.W.2d

305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

In conducting a de novo review of a sentence, we must consider (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel about sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, 40-35-210 (2010); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2010), Sentencing Comm'n Cmts.; *Ashby*, 823 S.W.2d at 169.

Although appellant states that his sentence is excessive, the crux of his argument is that it was excessive because the trial court should have afforded his mental health history more weight. The 2005 amendments to the 1989 Sentencing Act preclude appellant's argument that the trial court improperly weighed the enhancement and mitigating factors. *State v. Luellen*, No. W2009-02327-CCA-R3-CD, 2011 WL 2557010, at *15 (Tenn. Crim. App. June 27, 2011). In this case, the trial court properly considered the sentencing guidelines in arriving at appellant's sentence. The trial court gave great weight to appellant's lengthy criminal history and failure to comply with terms of release into the community and gave little weight to appellant's history of mental illness. Because the trial court followed the proper procedure, we review its decision de novo with a presumption of correctness. We find no basis in the record on which to find that the trial court erred in imposing the sentence of eleven years and six months. Appellant is not entitled to relief on this issue.

## CONCLUSION

Based on our review of the record and the parties' briefs, we discern no error and affirm the judgments of the trial court.

_____

ROGER A. PAGE, JUDGE