IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2016

**STATE OF TENNESSEE v. ELLIS JOHNSON**

**Appeal from the Criminal Court for Shelby County**
**No. 13-05975     John W. Campbell, Judge**

---

**No. W2015-01242-CCA-R3-CD  -  Filed November 18, 2016**

---

The defendant, Ellis Johnson, was convicted by a Shelby County Criminal Court jury of aggravated burglary, a Class C felony, and was sentenced to thirteen years in the Department of Correction.  On appeal, he argues that:  (1) the trial court erred in allowing the victim to testify about her injuries; (2) the trial court erred in ruling that the State could introduce five of his prior convictions for impeachment purposes; (3) the evidence is insufficient to sustain his conviction; and (4) he is entitled to relief due to the cumulative effect of the errors.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Joshua B. Dougan, Jackson, Tennessee (on appeal); and Micah Gates, Memphis, Tennessee (at trial), for the appellant, Ellis Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie H. Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant was indicted for aggravated burglary with intent to commit theft and aggravated burglary with intent to commit assault as a result of his forceful entry into the victims' hotel room during the early morning hours of August 18, 2013.  The jury

acquitted him of aggravated burglary with intent to commit theft but convicted him of aggravated burglary with intent to commit assault.

The proof at trial showed that Phyllis Dickson accompanied her friend, Modesta "Missy" Mikell on a trip to Memphis from Central Arkansas so Ms. Mikell could purchase items for an interior design client. The two women checked into the Westin Hotel late in the afternoon on August 17 and then went to Beale Street to listen to blues music and people watch. They each had two alcoholic drinks over the course of the evening.

When they returned to the hotel around 1:00 or 2:00 a.m., Ms. Dickson decided that she wanted to smoke and asked for the valet to bring her car around. Ms. Dickson sat in her car talking on the phone and smoking cigarettes. Meanwhile, Ms. Mikell sat in the lobby for about an hour and then sent Ms. Dickson a text message that she was going to the room and would leave the lights on. Ms. Mikell got ready for bed, turned on the TV, and dozed off.

Ms. Dickson smoked half a pack of cigarettes and went back into the lobby, where she talked to the desk manager and left her keys for the valet. It was then around 4:00 a.m. She got onto the elevator to go to her room, and the defendant was already in the elevator. The defendant did not push a button for any particular floor. During the elevator ride, Ms. Dickson began to feel uneasy about the defendant. The defendant got off on the same floor as Ms. Dickson, but when she turned to go right and the defendant went left, she felt at ease again. As she proceeded down the hall, Ms. Dickson heard footsteps behind her. She turned and saw that it was the defendant again. She bent down and pretended to tie her shoe to see if the defendant would walk past her. The defendant walked past her and out of sight, and Ms. Dickson concluded that she was just being paranoid. She then walked to the room she shared with Ms. Mikell at the end of the hallway.

As soon as Ms. Dickson put her key card into the door, she was pushed forward and the door slammed against the wall inside. She turned around and was nose-to-nose inside the room with the defendant and the door closed. Ms. Dickson called for Ms. Mikell, who had been awakened by the sudden bang of the door. Ms. Dickson retreated further into the room and told Ms. Mikell to call 911. When Ms. Mikell did not take action quickly enough, Ms. Dickson went on the offensive, screaming and cursing and "acting like [she] was a tough bitch." The defendant eventually turned and left the room, and the women called the front desk and the police. When the police responded to the hotel, the women told them what had happened and provided a description of the assailant. Both women identified the defendant from a photographic array within hours of the assault.

2

The women left Memphis after finishing their discussions with the police. When Ms. Dickson got home, she noticed a knot on her head and began to experience a severe headache, causing her to stay in bed for three days. On the third day, she went to the emergency room and discovered that she had "a contusion and a knot" on the back of her head. She did not specifically remember getting hit in the head during the incident but, aside from the altercation with the defendant, she experienced no other trauma or incident that could have given rise to her injuries. Ms. Dickson acknowledged telling the police in her statement that she was not injured, but she explained that she was not aware of her injury at that time and her headache did not set in until she was home.

Officer Darrell Hubbard with the Memphis Police Department responded to the call at the Westin Hotel. He spoke to the victims and obtained a description of the assailant. He also watched surveillance footage from the hotel and put out a broadcast for officers to be on the lookout for someone matching the description. The defendant was located by another officer within ten to fifteen minutes of the broadcast going out.

Officer Sean Keane with the Memphis Police Department heard a broadcast about the incident toward the end of his overnight shift. Around 8:00 a.m., after he finished his shift, Officer Keane saw someone matching the description of the assailant. Officer Keane called in his location and followed the suspect until on-duty units arrived and detained him. The defendant was "very uncooperative" when he was arrested but did not show signs of being intoxicated.

## ANALYSIS

The defendant appealed, arguing: (1) the trial court erred in allowing the victim to testify about her injuries; (2) the trial court erred in ruling that the State could introduce five of his prior convictions for impeachment purposes; (3) the evidence is insufficient to sustain his conviction; and (4) he is entitled to relief due to the cumulative effect of the errors.

### I. Victim's Injury

The defendant argues that the trial court erred in allowing Ms. Dickson to testify about an injury that appeared two days after the incident, when the cause of the injury was not within her personal knowledge. He asserts that such testimony "resulted in unfair prejudice and confusion of the issues."

Questions concerning the admissibility of evidence generally rest within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of

discretion. See State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citations omitted). "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tenn. R. Evid. 602. A witness is competent to testify about a matter if he or she "perceived the facts through one or more of the five senses." State v. Boling, 840 S.W.2d 944, 949 (Tenn. Crim. App. 1992) (witness met the personal knowledge test even though he claimed no recollection of crime, due to a head injury, because he experienced it through one or more of his five senses). A witness need not have "absolute certainty" to testify about a matter; the question is whether the witness "had a sufficient opportunity to perceive the subject matter about which he or she is testifying." State v. Land, 34 S.W.3d 516, 529 (Tenn. Crim. App. 2000). Moreover, even a lay witness may make inferences or offer opinion testimony if it is "rationally based on the perception of the witness." Tenn. R. Evid. 701(a); see also State v. Samuel, 243 S.W.3d 592, 603 (Tenn. Crim. App. 2007).

The defendant asserts that Ms. Dickson's testifying about her injuries violated the personal knowledge requirement because she had no memory of the defendant's injuring her. However, a review of Ms. Dickson's testimony defeats this contention. When the State started to ask Ms. Dickson about her injuries, the defense objected that Ms. Dickson "may be about to testify about something that she thinks happened but she doesn't really remember" and should not be able to "testify about the cause of something if she doesn't remember it happening." The court held that Ms. Dickson could testify whether she had the injuries before the assault.

Thereafter, Ms. Dickson testified that she left Memphis and went directly home, at which point she noticed a knot on her head and developed a severe headache that kept her in bed for three days. She went to the emergency room, and doctors discovered "a contusion and a knot" on the back of her head. She acknowledged telling the police in her statement that she was not injured, but she explained that she was not aware of any injury at that time and her headache did not set in until she was home. She said that she did not suffer any other trauma that could have caused the injury.

There was no error in the admission of this testimony. Ms. Dickson did not testify to anything of which she did not have personal knowledge. She never testified as to what caused her injury, only that she had not suffered any other trauma, which was within her personal knowledge. The extent to which Ms. Dickson's testimony implied that the defendant's assault caused her injury was an inference Ms. Dickson was permitted to make.

The defendant also asserts that Ms. Dickson's testimony should have been excluded under Tennessee Rule of Evidence 403, as the probative value of her testimony was substantially outweighed by the danger of unfair prejudice and confusion of the

4

issues. Tennessee Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The defendant claims that the probative value of the testimony "was slight given that she told police at the time she was uninjured." Whereas, the danger of unfair prejudice and confusion of the issues "was great" because he did not know about "this new, conflicting story" until "the eve of the trial," and there was no way for him to effectively cross-examine Ms. Dickson about other possible causes of her injury "because those causes would have happened when she was at home by herself."

When the defendant learned about the evidence does not impact its probative value. Probative value concerns whether there is "a real dispute about the issue the evidence is to prove." State v. Young, 196 S.W.3d 85, 106 (Tenn. 2006) (internal emphasis and quotation omitted) (citation omitted). The defendant, here, challenges the proof that he intended to commit an assault. Thus, evidence that Ms. Dickson actually sustained an injury as a result of the defendant's conduct was highly probative of an issue in dispute.

As to the defendant's claim of danger of unfair prejudice and confusion of the issues due to his inability to prepare an effective cross-examination, the defendant has not explained how his cross-examination would have been any different had he had more time to prepare. We discern no danger of unfair prejudice or confusion of the issues and certainly not enough to substantially outweigh the probative value of Ms. Dickson's testimony.

## II. Prior Convictions

The defendant argues that the trial court erred in finding that the State could introduce five of his prior convictions for impeachment purposes under Tennessee Rule of Evidence 609 if he testified. He asserts that the "slight probative value of the prior convictions did not substantially outweigh, or even slightly outweigh their great prejudicial effect."

Prior to trial, the State filed a notice to seek enhanced punishment and notice of impeachment listing twenty prior convictions. At the Rule 609 hearing, the State clarified that it sought to introduce only seven of those convictions for impeachment purposes: (1) possession of cocaine with intent to sell dated December 9, 2009; (2) aggravated burglary dated April 21, 2005; (3) theft of property valued between $1000 and $10,000 dated April 21, 2005; (4) aggravated assault dated August 3, 2001; (5) possession of a controlled substance with intent to sell dated August 14, 2000; (6) theft of

property valued between $500 and $1000 dated June 24, 1998; and (7) theft of property valued between $500 and $1000 dated May 8, 1997.

After hearing argument from the parties, the trial court determined that the 2001 conviction for aggravated assault and the 2000 conviction for possession of a controlled substance with intent to sell were not admissible. The court found that the possession of cocaine conviction from 2009 was admissible because it was a general felony, less than ten years old, and not prejudicial. The court found that the aggravated burglary and three theft convictions were admissible because they were all crimes of dishonesty and directly relevant to the defendant's credibility. The court recognized that the defendant was on trial for aggravated burglary and that two of the theft convictions were older, but it also recognized that the primary issue at trial would be the witnesses' credibility and each of those convictions spoke directly to the defendant's credibility. The court determined that the probative value of those convictions on credibility substantially outweighed the prejudicial effect. The court noted that it would instruct the jury to consider the convictions only when assessing the defendant's credibility.

Following the trial court's ruling, defense counsel voir dired the defendant about whether he wanted to testify, and the defendant stated that he was not going to testify in light of the trial court's ruling regarding the admissibility of his prior convictions.

A conviction may be used to impeach the testimony of an accused in a criminal prosecution if the following four conditions are satisfied: (1) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution; (3) the State gives reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment; and (4) the trial court concludes that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609; State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999).

Two factors should be considered when deciding whether the probative value of a prior conviction outweighs its unfair prejudicial effect. Mixon, 983 S.W.2d at 674. First, "[a] trial court should . . . analyze the relevance the impeaching conviction has to the issue of credibility." Id. (citation omitted). Second, if the trial court finds that the prior conviction is probative of the defendant's credibility, then the court should "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" Id. (quoting Neil P. Cohen et al., Tennessee Law of Evidence § 609.9 at 376 (3d ed. 1995)). The more similar the impeaching conviction is to the offense for

6

which the defendant is on trial, the greater the risk of a prejudicial effect to the defendant. Id.

This court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. See State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003).

We discern no abuse of discretion in the trial court's ruling on this matter. Burglary and theft are offenses involving dishonesty and, as such, are highly probative of credibility. See State v. Baker, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997); State v. Tune, 872 S.W.2d 922, 927 (Tenn. Crim. App. 1993). The court was well aware of the similarity between some of the defendant's prior convictions and the present case, but it determined after careful consideration that their probative value on the credibility of the defendant substantially outweighed any prejudicial effect. The court found that the possession of cocaine conviction fell squarely in the allowable time frame and, being an unrelated offense, bore no danger of the jury finding that the defendant was acting under propensity causing him prejudice. We agree and, accordingly, conclude that the defendant is not entitled to relief on the basis of this issue.

Moreover, even if the trial court erred in determining that the five prior convictions would be admissible for impeachment, there is no proof by which we can conclude that the error "affirmatively or more probably than not affected the judgment to the defendant's prejudice." State v. Taylor, 993 S.W.2d 33, 35 (Tenn. 1999). To make this determination, this court examines the theory of defense to ascertain "whether the erroneous impeachment would have had an impact on the result of the trial." State v. Lankford, 298 S.W.3d 176, 182-83 (Tenn. Crim. App. 2008). A defendant is not required to make an offer of proof of his proposed testimony, but "[d]epending upon the facts and circumstances of a case, an offer of proof may be the only way to demonstrate prejudice." See State v. Galmore, 994 S.W.2d 120, 125 (Tenn. 1999).

Here, the defendant presented no evidence at trial and did not make an offer of proof as to what his testimony would have been for us to discern how his testimony would have affected the outcome of trial. He also has presented no specific argument on appeal concerning the substance of his contemplated testimony. We note that there is some insinuation in the defendant's brief that his testimony might have been that he was intoxicated when he entered the room and, had that been the defendant's testimony, his credibility would have been highly probative in light of Officer Keane's testimony that the defendant showed no signs of being intoxicated.

# III. Sufficiency

The defendant argues that the evidence is insufficient to sustain his conviction, asserting that the State failed to prove that he entered the hotel room with intent to commit assault.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In order to convict the defendant of aggravated burglary, the jury had to find that the defendant entered the victims' hotel room, without permission, and with the intention of committing an assault. Tenn. Code Ann. §§ 39-12-101; 39-14-403. The jury was charged that assault is "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." Id. § 39-13-101(a)(2). The defendant does not dispute that he entered the hotel room; he only contends that the State did not prove that he entered with intent to commit assault.

In the light most favorable to the State, the evidence shows that the defendant followed Ms. Dickson down an empty hotel hallway during the early morning hours of August 18, 2013. Ms. Dickson was anxious about the defendant's presence and did not try to enter her hotel room until he was not nearby. Unbeknownst to Ms. Dickson, the defendant was still lurking about and, when she tried to open the door to her room, he shoved her into the door, slammed the door against the wall, and forced her into the room. There is an indication in the testimony that suggests the defendant knocked Ms. Dickson's head when he forced himself into the room. After forcefully entering the room, the defendant continued to press further and further into the room, while Ms. Dickson called out to her friend, Ms. Mikell, who was already in the room for help. The defendant only retreated after seeing that there was another person in the room, and Ms. Dickson started screaming and swinging her purse at him. This evidence and all reasonable inferences which may be drawn therefrom is more than sufficient for the jury to conclude that the defendant entered the hotel room without consent and that he intended to cause fear of bodily injury, if not actual injury.

## IV. Cumulative Error

The defendant lastly argues that the cumulative effect of the errors in the case warrants reversal, even if none of the errors do so individually. However, having found no errors, we respectfully disagree and conclude that the defendant is not entitled to relief on the basis of cumulative error.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE