IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs December 9, 2025

## STATE OF TENNESSEE v. JAKE CHRISTOPHER REYNOLDS

**Appeal from the Circuit Court for Giles County**
**No. 16638     Christopher V. Sockwell, Judge**

_____

**No. M2024-01481-CCA-R3-CD**

_____

A Giles County jury convicted the defendant, Jake Christopher Reynolds, of criminal trespass, preventing or obstructing service of legal process, and resisting arrest, for which he received an effective sentence of ten days in confinement. On appeal, the defendant contends the trial court erred in admitting evidence of the defendant's prior convictions and in incorrectly charging the jury on the statutory defense to criminal trespass. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Kendall Stivers Jones and Raven Prean-Morris, Assistant Public Defenders, Tennessee District Public Defenders Conference (on appeal); and Travis Jones, District Public Defender; and Teresa Campbell, Assistant Public Defender (at trial), for the appellant, Jake Christopher Reynolds.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Brent Cooper, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On January 11, 2023, a Giles County Grand Jury indicted the defendant for criminal trespass, preventing or obstructing service of legal process, and resisting arrest, stemming

from the defendant's actions during the service of a writ of possession at the defendant's residence. The property located at 140 Lane Circle was initially owned by William Gable, the defendant's father's cousin. Mr. Gable died on November 1, 2019, and an estate was opened on December 16, 2019. On March 13, 2020, TennCare filed a timely claim in the amount of $30,339.46. In his will, Mr. Gable left the property to the defendant's father, and on January 14, 2021, the defendant's father filed a quitclaim deed giving the property to the defendant. While the defendant and his father were at the register of deeds office filing the quitclaim deed, they spoke to Crystal Greene, the Clerk and Master of Giles County. Ms. Greene attempted to inform the defendant's father that he could not file the quitclaim deed while Mr. Gable's estate was still open. However, the defendant's father did not appear to understand that the quitclaim deed was invalid and filed it anyway.

On January 18, 2022, during a hearing in Giles County Chancery Court, the Chancery Court set aside the property transfer from the defendant's father to the defendant and ordered the property to be sold to pay estate creditor claims. On March 25, 2022, Ms. Greene was informed that the defendant was in the register of deeds office. She asked the defendant if he had vacated the property, and he informed her that "he had not moved out, he was not going to move out, and that [Ms. Greene would] have to get the police to get him to move out."

On April 6, 2022, the defendant was present for a hearing during which the Chancery Court granted a temporary injunction enjoining the defendant and his father from recording any documents inconsistent with the sale of the property by Ms. Greene for the State and from causing damage to the property. The Chancery Court also required the defendant to vacate the property and turn over the keys to the court no later than May 6, 2022. Because the defendant did not vacate the property by May 6, Ms. Greene filed a writ of possession on May 9, 2022, which was to be served by the Giles County Sheriff's Department ("GCSD").

On May 10, 2022, the defendant spoke to Sheriff Kyle Helton, whom he had known for most of his life. Sheriff Helton told the defendant about the writ of possession and advised him to leave the property. The defendant told Sheriff Helton that he "would have to arrest [the defendant] before he would . . . leave." Sheriff Helton later spoke with Ms. Greene about her safety concerns regarding the defendant and decided to send additional deputies to serve the writ of possession "because [he] didn't want to have problems."

On May 12, 2022, GGSD Deputies Billy Grenko, Michael Schrader, Eric Smith and Pulaski Police Department Officer Jacob Brooks arrived at 140 Lane Circle to serve the writ of possession. Ms. Greene was also present with a locksmith. When the officers knocked on the door, the defendant's nephew, a minor, answered and stated that he was home alone. The officers advised him to contact an adult who resided at the house. The

defendant arrived a few minutes later and walked onto the driveway of the property. The officers explained why they were there and attempted to serve him with the writ; however, the defendant "was being pretty aggressive" and was "yelling and cussing at [the officers] and basically refusing to hear anything [they] had to say." The defendant, who was still on the driveway, constantly spoke over the officers and refused to accept the writ. Although the officers attempted to stop him, the defendant started "moving toward the house and he told [them] that he was going in that house, it didn't matter what [they] had." Eventually, Deputy Grenko advised the defendant multiple times that he needed to leave the property or else he would be arrested for criminal trespass. However, the defendant remained on the property, and so Deputies Smith and Shrader informed him that he was under arrest. When they advanced toward the defendant to take him into custody, the defendant immediately "[took] off, off of the property."

It appeared to Deputy Grenko that the defendant was attempting to evade arrest, and the defendant had almost returned to his vehicle when Deputy Shrader reached him. At that point, the defendant "firmed up and like popped his chest . . . almost like he was going to hit [Deputy Shrader]." When Deputy Shrader attempted to grab the defendant's wrists, the defendant threw his arms in the air, and Deputy Shrader wrestled the defendant to the ground. Deputy Shrader, Deputy Smith, and Officer Brooks attempted to gain control of the defendant's hands in order to handcuff him; however, the defendant, who was larger than the officers, continuously pulled his hands away, attempted to grab the officers' arms and legs, and placed his hands flat on the ground in a push-up position to evade the officers efforts. Because of the defendant's continued resistance, Deputy Smith held the defendant's head to the ground to prevent him from lifting up. Additionally, Deputy Grenko deployed his Taser; however, "it wasn't very effective." During the entire encounter, the officers commanded the defendant "to stop, to give [them] his hands, [and to] stop moving." Eventually, the officers were able to subdue the defendant enough to handcuff him and take him into custody.

Prior to the defendant's arrest, Deputy Grenko worried about Ms. Greene's safety and told her to get into her car. Once inside her vehicle, Ms. Greene began filming the encounter on her phone. The defendant's nephew also filmed a portion of the encounter from the front steps of the residence. Both videos were entered into evidence and played for the jury.

GCSD Corporal Marilyn Mitchell, a supervisor at the county jail, testified that her main duties were to "provide and care for the inmates and care for their well-being and mental health." Each inmate introduced into the jail, including the defendant, completed a standard medical questionnaire. The defendant did not report any injuries on his medical form, and Corporal Mitchell did not observe any injuries on the defendant at the time of his intake. On cross-examination, Corporal Mitchell agreed that inmates sometimes wait

- 3 -

to report injuries to the nurse after arriving at the jail and stated that she would not have information about whether the defendant visited the nurse.

The defendant testified on his own behalf, admitting that he had been to prison before and had committed several crimes. He stated that he was released on parole in 2019 and lived with his sister in Murfreesboro for several years. While there, he graduated from trade school and held a steady job. When his sister moved to Giles County in 2022, the defendant moved to 140 Lane Circle, a property his father quitclaimed to him. The defendant testified that he was not aware of the probate case involving Mr. Gable and that he was not present for most of the hearings pertaining to the estate. However, the defendant admitted that he was present for the hearing on April 6, 2022.

On May 12, 2022, the defendant received a call from his mother telling him that the police were at his Lane Circle house. When he arrived at the residence, the defendant walked up the driveway and was "accosted" by an officer, who told the defendant that he was trespassing. The defendant told the officer that he lived at the property and that he had spoken to the sheriff the previous day. The officer accused the defendant of lying, and another officer approached with paperwork. However, the defendant told the officer that he "ain't got nothing to say to you. He called me a liar." The defendant then left the property after approximately forty-five seconds and told the officers that he was no longer on the premises. The defendant put his hands up and told the officers that he did not't "have to talk to y'all." One of the officers told the defendant that he was under arrest, but the defendant repeated that he was "off the property." Although the defendant denied taking a boxer's stance toward an officer because that would have violated his parole, an officer "tackled" him. When the defendant fell to the ground, his "natural reflex" was "to try to catch [himself] and put [his] hands up." At one point, the defendant had a hard time breathing due to an officer placing his knee on the defendant's shoulder. The defendant also testified that, despite officers' testimony that the defendant was only tased one time, he observed two scars on his body the following day. The defendant testified that his neck was injured as a result of the encounter, and he reported the injury to the nurse while he was incarcerated. He also testified that he had received a referral to a surgeon for his injuries. The defendant denied that officers told him that he was under arrest prior to his leaving the property.

On cross-examination, the defendant agreed that proper compliance when being arrested is placing your hands behind your back when instructed. The defendant denied that he put his hands up after an officer grabbed his wrists. However, the defendant agreed that he did not provide his arms for the officers to handcuff him. Although the defendant initially denied grabbing at the officers' legs while he was on the ground, he agreed that photographs showed his hand on an officer's ankle. However, he stated his "fingers [were not] grabbing it." The defendant also denied that Sheriff Helton advised him that he would

have to vacate the property and that he told Sheriff Helton that the only way he would leave the property was under arrest. Instead, he testified that he simply wanted to discuss his property deed with the sheriff because he was unable to get help elsewhere. He admitted that the sheriff informed him that a writ would be served in two days. The defendant agreed that he had a pending civil suit against the four officers who arrested him. The defendant also agreed that he had three felony drug convictions and two felony theft convictions. On redirect examination, the defendant testified that his theft convictions were committed twenty-five years ago, and the drug convictions were committed between 2000 and 2005. The defendant stated that he was a model inmate while incarcerated and had not been in trouble since his early release in 2019.

On rebuttal, the State called GCSD Deputy Timmy, who testified that he oversaw courtroom security during the April 6, 2022 hearing. Deputy Scott testified that the defendant was present at the hearing at which the Chancery Court informed the defendant that he had to vacate the residence at 140 Lane Circle by May 6, 2022, and turn over the keys to Ms. Greene.

Following deliberations, the jury found the defendant guilty of criminal trespass, preventing or obstructing service of legal process, and resisting arrest, and the trial court subsequently sentenced the defendant to an effective sentence of ten days in confinement. The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

## *Analysis*

On appeal, the defendant argues the trial court erred in admitting evidence of the defendant's prior convictions and in charging the jury on the statutory defense to criminal trespass. The State contends the defendant is not entitled to plain error relief for the admission of the defendant's prior convictions or for the jury instructions.

## I.      The Defendant's Prior Convictions – Plain Error[1]

The defendant argues the trial court erred in allowing the State to impeach the defendant with his prior convictions. The defendant contends the trial court did not conduct the required balancing test under Rule 609. The defendant acknowledges that he did not contemporaneously object to the testimony but requests relief as a matter plain error. The State contends the defendant is not entitled to plain error relief. We agree with the State.

---

[1] For the sake of clarity, we have reordered and renumbered the issues from the order they appeared in the defendant's brief.

Tennessee Rule of Evidence 609 permits an accused's credibility to be impeached by prior criminal convictions on cross-examination if (1) the conviction is for a crime punishable by death or imprisonment in excess of one year, or the conviction is for a misdemeanor which involved dishonesty or false statement; and (2) less than ten years has elapsed between the date the accused was released from confinement and the commencement of the subject prosecution. Tenn. R. Evid. 609(a)(1), (2), (b). The State must give reasonable pretrial written notice of the particular conviction or convictions it intends to use as impeachment, and the trial court, upon request, must conclude that the probative value of the prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3); *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999). Convictions that exceed this time limit may be admitted if the proponent gives the adverse party sufficient notice and the trial court "determines in the interests of justice that the probative value of the conviction, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Tenn. R. Evid 609(b). Thus, "[u]nder the evidentiary rules, the [S]tate bears a higher burden of establishing the admissibility of convictions over ten years." *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000).

In deciding whether the probative value of a prior conviction outweighs its unfair prejudicial effect, "[a] trial court should first analyze the relevance the impeaching conviction has to the issue of credibility." *Mixon*, 983 S.W.2d at 674 (citation omitted). If the trial court finds that the prior conviction is probative of the defendant's credibility, then the court should "'assess the similarity between the crime on trial and the crime underlying the impeaching conviction.'" *Id.* (quoting Neil P. Cohen et al., *Tennessee Law of Evidence* § 609.9 at 376 (3d ed. 1995)). The more similar the impeaching conviction is to the offense for which the defendant is on trial, the greater the risk of a prejudicial effect to the defendant. *Id.* This Court reviews a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003).

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

- 6 -

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

Prior to trial, the State notified the defendant of its intent to cross-examine him about his prior convictions for one count of possession of cocaine for resale, one count of possession of marijuana for resale, and one count of sale of cocaine in 2005; two counts of theft over $1000, one count of attempted voluntary manslaughter, and one count of reckless endangerment with a deadly weapon in 2001; and five counts of possession of cocaine for resale and one count of sale of cocaine in 1997. The parties addressed the matter following the close of the State's proof. The defense agreed that the defendant's 2005 convictions were within ten years of the defendant's release from confinement and could, therefore, be admitted. However, the defense argued the defendant's remaining convictions should not be admitted, arguing they were outside of the ten-year limit and "would be very prejudicial to [the defendant]." The trial court found that the State could cross-examine the defendant regarding his three 2005 convictions as well as his two theft convictions from 2001. The trial court concluded that the remaining convictions would not be admitted because they did not "go to the proclivity to tell the truth."

We conclude the defendant is not entitled to plain error relief because he cannot establish that a clear and unequivocal rule of law was breached by the trial court's decision regarding his prior convictions. The State asserts the defendant's 2005 convictions were admissible under Tennessee Rule of Evidence 609(a) because the defendant agreed to their admission and did not request a balancing test. Additionally, the State contends the defendant's 2001 theft convictions were admissible under Rule 609(b) because the convictions were "highly probative of [the defendant's] credibility" and dissimilar from his charged offenses, "which reduces the unfair prejudicial effect on the substantive issues." We agree.

Regarding the defendant's 2005 convictions, the trial court stated, "I think we're in agreement, the first three come in," and defense counsel replied, "I agree." Rule 609(a)(3) provides that a trial court must determine the admissibility of a criminal defendant's prior convictions for impeachment purposes only "upon request." Tenn R. Evid. 609(a)(3). The trial court breached no clear and unequivocal rule of law when it did not override defense

counsel's decision to acquiesce to the admissibility of the defendant's three prior 2005 convictions.

Looking to the defendant's 2001 convictions for theft over $1000, this Court has recognized that "burglary and theft offenses are highly probative of credibility because these crimes involve dishonesty." *State v. Lankford*, 298 S.W.3d 176, 181 (Tenn. Crim. App. 2008). The defendant asserts that his "case and defense turned greatly on the credibility of the witnesses – particularly his understanding of what was happening in the civil process of probate." However, the probative value of an impeaching conviction increases when witness credibility is "the sole or primary issue." *State v. Bowen*, No. W2015-01316-CCA-R3-CD, 2015 WL 226093, at *4 (Tenn. Crim. App. Jan. 15, 2015), *no perm. app. filed*. Moreover, our supreme court has recognized the possibility that a greater number of impeaching convictions "are more probative of credibility than a lesser number would be[.]" *Waller*, 118 S.W.3d at 373. The fact that the defendant had two convictions for theft increased their probative value as to his credibility. Although the theft convictions were outside of the ten-year time limit, they were not similar in nature to the crimes on trial, limiting concerns about the unfair prejudicial effect of the evidence of the prior convictions on the substantive issues. Additionally, the trial court did not allow the defendant's remaining stale convictions to be admitted, further limiting any potential prejudice. Accordingly, the defendant cannot establish that a clear and unequivocal rule of law was breached or that the trial court's ruling adversely affected a substantial right of the defendant. The defendant, therefore, failed to meet his burden and is not entitled to relief as a matter of plain error on this issue.

## B.    Jury Instruction – Plain Error

The defendant argues the trial court erred in charging the jury on the statutory defense to criminal trespass. The defendant asserts the trial court's instruction misstated the statute and "had the jury heard the correct charge for the criminal trespass defense, the burden would have shifted to the State to show beyond a reasonable doubt that these criteria were not met." The State contends the defendant has waived plenary review of this claim because he failed to object to the jury instruction at trial and failed to raise the issue in his motion for new trial. We agree with the State. Additionally, the State insists the defendant is not entitled to plain error relief. Again, we agree with the State.

A defendant has a right to a correct and complete jury charge. *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000). This right is constitutional in nature. *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). The trial court must present the propositions of law governing the case plainly to the jury, in such a manner as to enable them to comprehend the principles involved. *State v. Williamson*, 919 S.W.2d 69, 80 (Tenn. Crim. App. 1995). "Nothing short of this will 'satisfy the demands of justice' or the defendant's

right to a jury trial." *Id.* (quoting *Crawford v. State*, 44 Tenn. 190, 195 (1867)). Whether jury instructions are sufficient is a question of law, which we review de novo with no presumption of correctness. *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014).

As stated above, before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *Adkisson*, 899 S.W.2d at 639. "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *Page*, 184 S.W.3d at 231. In *State v. Smith*, our supreme court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d at 282-83 (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283. For a "substantial right" of the accused to have been affected, the error must have prejudiced the defendant. In other words, it must have affected the outcome of the trial court proceedings. *United States v. Olano*, 507 U.S. 725, 732-37 (1993); *Adkisson*, 899 S.W.2d at 642.

After the close of the State's evidence, the jury was excused, and the trial court discussed the jury instructions with the parties, during which the following exchange occurred:

Trial Court:          All right.  If you'll go to the definitions of criminal trespass, if you'll go down –

. . .

Trial Court:          All right.  You go down to the bottom, and it is a defense to the prosecution for this case and then it gives three items: that the property was open to the public when the defendant entered and remained; that the

defendant's conduct did not substantially interfere with the owner's use of the property; and three, that the defendant immediately left the premises on request.

At least where I – I think I'm understanding where your argument is probably going to be, [defense counsel]. I think that would be left there along with the explanation. But I do think the following paragraph on page 2, the last two paragraphs, would not be applicable. Can I get your input on that?

Defense Counsel:    I think – I agree.

. . . .

Trial Court:           Yeah. The first paragraph would remain but the second two paragraphs would be deleted.

Defense Counsel:    I'm good with that.

The trial court subsequently issued the pattern jury instruction on criminal trespass, including the statutory defense to criminal trespass. *See* T.P.I. – Crim. § 14.05. The jury was instructed as follows:

It is a defense to prosecution for this offense:

(1) that the property was open to the public when the defendant entered and remained; and

(2) that the defendant's conduct did not substantially interfere with the owner's use of the property; and

(3) that the defendant immediately left the premises upon request.

If evidence is introduced supporting this defense, the burden is on the State to prove beyond a reasonable doubt that (1) the property was not open to the public when the defendant entered or remained, or (2) that the defendant's conduct substantially interfered with the owner's use of the property, or (3) that the defendant did not immediately leave the premises upon request. If you find from the evidence that (1) the property was open to the public when the defendant entered or remained, and (2) that the defendant's conduct did not substantially interfere with the owner's use of the property, and (3) that the defendant immediately left the premises upon request, or if you have any

- 10 -

reasonable doubt thereof, you must find the defendant not guilty of this offense.

The defendant argues that the first criterion of the jury instruction issued by the trial court did not coincide with the statutory defense in the criminal trespass statute. The State contends the defendant has failed to establish that the statutory defense, even if correctly instructed, would have applied. Tennessee Code Annotated section 39-14-405(b) states that

It is a defense to prosecution under this section that:

(1) A person entered or remained on property that the person reasonably believed to be property for which the owner's consent to enter had been granted;

(2) The person's conduct did not substantially interfere with the owner's use of the property; and

(3) The person immediately left the property upon request.

We conclude the defendant is not entitled to plain error relief because he cannot establish the violation of a substantial right. The statutory defense to criminal trespass requires the defendant to submit evidence supporting all three criteria. If evidence is introduced supporting the defense, the burden shifts to the State to prove beyond a reasonable doubt that the defense does not apply. Here, the defendant testified that he was present at the April 6, 2022 hearing, during which the Chancery Court instructed the defendant and his father to vacate the property at 140 Lane Circle and to turn over the keys to Ms. Greene by May 6, which the defendant failed to do. Ms. Greene was, therefore, forced to file a writ of possession requiring the defendant to vacate the property and allow her to sell it. Sheriff Helton testified that he spoke to the defendant two days before the writ was to be served and told the defendant that he needed to vacate the property. The defendant told Sheriff Helton that he "would have to arrest [the defendant] before he would . . . leave [the property]." When the defendant arrived at 140 Lane Circle on May 12, Deputy Grenko testified that the defendant was "being pretty aggressive" and "refus[ed] to hear anything [the officers] had to say." Deputy Grenko advised the defendant to leave the property multiple times; however, the defendant continued moving toward the house. Ms. Greene testified that the defendant "forcibly [came] towards" the officers as they were talking to him. The proof also showed that the defendant did not leave the property until the officers had already informed him that he was under arrest for criminal trespass. Because the defendant substantially interfered with Ms. Greene's use of the property and did not leave immediately upon request by the officers, the statutory defense was

- 11 -

inapplicable despite the misstatement of the first criterion. Thus, a substantial right of the defendant was not affected as required for relief as a matter of plain error. Because the defendant has not established that all five *Adkisson* factors exist, he is not entitled to plain error relief based on the trial court's erroneous jury instructions.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.


s/ J. ROSS DYER
J. ROSS DYER, JUDGE