IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 18, 2026

## STATE OF TENNESSEE v. PARNELL QUINN SHORT

**Appeal from the Criminal Court for Hamblen County**
**No. 23CR498        Alex E. Pearson, Judge**

_____

### No. E2025-00153-CCA-R3-CD

_____

A Hamblen County jury convicted the Defendant, Parnell Quinn Short, of theft of property valued between $1000 and $2500, a Class E felony and fixed a fine of $1750. The trial court imposed the fine fixed by the jury and sentenced the Defendant, as a career offender, to serve six years to run consecutively to the Defendant's convictions in other cases. On appeal, the Defendant asserts that the trial court erred when it: (1) admitted three of his prior convictions for impeachment purposes; and (2) imposed the fine set by the jury without making the statutorily required findings. After review, we affirm the trial court's judgment but vacate the imposition of the fine. We remand the case for a sentencing hearing with respect to the imposition of the fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Vacated in Part, and Remanded**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division (on appeal), Franklin, Tennessee, and Konner F. Brabson, (at trial), Morristown, Tennessee, for the appellant, Parnell Quinn Short.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Philip M Gibson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant stealing a trailer. The Defendant entered the property of the victim, Christian Traconiz, without permission, hooked up a trailer to his truck, and drove away. The Defendant then sold the trailer to Gary Sutton and, the following day, he sold his truck to Mr. Sutton. For this crime, the Hamblen County grand jury indicted the Defendant for theft of property valued between $1000 and $2500, a Class E felony.

## A. Rule 609 Hearing

The State filed a notice of prior convictions pursuant to Tennessee Rule of Evidence 609. The State submitted twenty-seven prior felony convictions that it sought to introduce at trial for impeachment purposes, should the Defendant testify. The trial court held a hearing to determine the admissibility of the Defendant's prior convictions pursuant to Rule 609. The trial court determined that none of the felony theft convictions would be admissible because their similarity to the crime for which the Defendant was standing trial would cause their prejudicial effect to outweigh their probative value. Next, the trial court considered an aggravated burglary conviction and found that aggravated burglary was a crime of dishonesty. The Defendant argued that, like the theft convictions, the aggravated burglary conviction was too similar to the theft charges for which the Defendant was being tried. The trial court distinguished the aggravated burglary conviction from the theft conviction on the basis that the jury would not know whether the burglary was committed with the intent to commit "a felony, theft, or assault." T.C.A. § 39-13-1002. The trial court then considered the Defendant's prior conviction for being a felon in possession of a firearm. Although not a crime of dishonesty, the conviction was within ten years and a felony conviction, so the trial court ruled that this conviction would be admissible should the Defendant choose to testify at trial. Finally, the trial court considered an out-of-state conviction (Virginia) for attempted breaking and entering. In considering this conviction, the trial court found that the Virginia attempted breaking and entering conviction was comparable to a Tennessee burglary conviction, a crime of dishonesty, a felony, and was within ten years. The trial court found that the conviction was admissible should the Defendant choose to testify.

The trial court excluded all but five of the twenty-seven prior convictions. The five convictions were: (1) a July 21, 2022 conviction for forgery; (2) a July 21, 2022 conviction for aggravated burglary; (3) a May 10, 2013 conviction for aggravated burglary; (4) a November 1, 2017 conviction for felon in possession of a firearm; and (5) a January 23, 2014 conviction for attempted breaking and entering.

## B. Trial

Christian Traconiz testified that he lived on Cherokee Drive in Morristown, Tennessee. He owned a Hurst trailer that he parked along his driveway. Mr. Traconiz identified his trailer in a photograph and stated it was worth $3,200.00 at the time he purchased it. On August 9, 2023, Mr. Traconiz pulled into his driveway in the evening and saw that his trailer was not there. Mr. Traconiz watched the footage from his security camera system. He notified the police and provided them with the video recordings.

Mr. Traconiz also posted the surveillance video on social media to see if anyone recognized the truck or the individual on the video taking his trailer. The social media post garnered some responses, and Mr. Traconiz shared that information with the police. Mr. Traconiz also searched on Facebook "Marketplace" and found the truck seen in the surveillance video, posted for sale. Mr. Traconiz noted that the style and color of the truck was the same as the truck in the video but, additionally, on his surveillance video the truck had a hubcap on the driver's side rear tire but not on the driver's side front tire. This also was true of the truck shown for sale on Facebook Marketplace.

The police notified Mr. Traconiz that his trailer had been found in Tazewell. Mr. Traconiz drove to the location police provided and confirmed that the trailer was his trailer. He explained that he was able to identify the trailer based upon distinctive characteristics of his trailer such as a small dent on one of the sides.

Gary Sutton knew the Defendant from the Giles Flea Market, where the Defendant sold items. Mr. Sutton told the Defendant he was looking to buy a trailer. Mr. Sutton gave the Defendant his phone number, and the Defendant called to tell Mr. Sutton he had a trailer. Mr. Sutton and the Defendant negotiated, and ultimately the Defendant agreed to sell the trailer to the Defendant for an "AR" and "some cash." The Defendant delivered the trailer to Mr. Sutton's house. Mr. Sutton recalled that the Defendant appeared to be "in a hurry" when he dropped off the trailer. Several days after purchasing the trailer, the Defendant called Mr. Sutton again and asked if he wanted to buy a Ford pickup truck. Mr. Sutton bought the truck and identified the truck in a photograph. The Defendant provided Mr. Sutton with title to the truck that the Defendant had backdated. Mr. Sutton's granddaughter listed the truck for sale on Facebook Marketplace and, thereafter, law enforcement notified him that the trailer had been stolen.

Morristown Police Department ("MPD") Detective Ron Sergeant investigated the theft of Mr. Traconiz's trailer. He recounted the course of his investigation for the jury. He received the case on August 10, the day after Mr. Traconiz reported the trailer stolen. Detective Sergeant contacted Mr. Traconiz to confirm the information Detective Sergeant had received about the case, and Mr. Traconiz provided Detective Sergeant with the surveillance video.

On August 11, Mr. Traconiz sent Detective Sergeant pictures of the truck posted on Facebook Marketplace for sale. Detective Sargeant confirmed that the truck in the surveillance video was the same as the truck listed on Facebook Marketplace by comparing the trucks. He explained that he believed it to be the same vehicle:

> based upon the color, the make, model, the rain guards on the window, also the front center cap was missing on the wheel, and more distinctly than anything it had two metal or aluminum looking brackets that were made into the back of the truck that was drilled into the bed just in front of the back windshield.

Detective Sergeant contacted law enforcement in the area to "check it out." Law enforcement notified him that Mr. Sutton had the truck and a trailer that he had also recently purchased from the Defendant. Local law enforcement provided Detective Sergeant with the VIN number for the truck. Detective Sergeant ran the VIN number, and the truck was registered to the Defendant. Detective Sargeant then zoomed in on the person in the surveillance video to confirm that the man in the video was the Defendant.

George Sauceman, a District Attorney's office criminal investigator, obtained recorded jail telephone calls involving the Defendant. The State played a recorded call between the Defendant and Renee Short. Mr. Sauceman believed that Ms. Short was either the Defendant's wife or ex-wife. During the conversation the Defendant stated that, "somebody done told them everything" and that, "someone's running their mouth." He indicated that the police knew about "Tazewell" and that he "went and picked it up and everything." Next, he identified a visitation video between the Defendant and a woman who identified herself as Carol Dean. The Defendant discussed with Ms. Dean his charges and possible outcomes.

At the completion of the State's evidence, the Defendant testified on his own behalf. The Defendant confirmed that he had met Mr. Sutton at the flea market in Tazewell. The Defendant had been selling items at the flea market every weekend for two or three months. The Defendant recalled that he had sold Mr. Sutton four trailers, a Cub Cadet zero turn lawnmower, a four-wheeler, a dirt bike, welder, and other smaller items. The Defendant stated that three of the four trailers he sold to Mr. Sutton were "probably Hurst trailers." He confirmed that he sold Mr. Sutton a trailer in August 2023. When asked for a specific date, he said, "Sunday the 6th." He also confirmed that he sold Mr. Sutton a truck the next day, Monday, August 7. He explained that he recalled the dates because when he sold Mr. Sutton the truck, he looked at his phone and then dated the title. He denied that there were any errors in the title.

- 4 -

On cross-examination, the Defendant admitted to his prior convictions for aggravated burglary, forgery, felon in possession of a weapon, and breaking and entering. The Defendant confirmed that he was certain he sold the trailer to Mr. Sutton on August 6 and the truck on August 7.

On redirect examination, the Defendant testified that he had pleaded guilty to all the convictions the State had questioned him about.

After hearing this evidence, the jury convicted the Defendant of theft between $1,000 and $2,500, a Class E felony. The jury also fixed a fine of $1,750. At a subsequent sentencing hearing, the trial court sentenced the Defendant to serve six years to run consecutively to the Defendant's convictions in other cases. The trial court imposed the jury's fine of $1,750, without objection. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant argues that the trial court erred when it allowed the State to impeach the Defendant with his prior convictions. The Defendant also asserts that the trial court failed to make the statutorily required findings before imposing the $1750 fine assessed by the jury.

## A. Evidence of Prior Convictions

The Defendant contends that the trial court erred when it allowed the State to impeach him with his prior convictions for aggravated burglary and attempted breaking and entering. Specifically, the Defendant argues that the trial court failed to completely address the relevance of his prior convictions, pursuant to Rule 609 of the Tennessee Rules of Evidence, and that, due to the similarity of his prior convictions to the charged offense, the use of his prior convictions was unfairly prejudicial. The State argues that the trial court properly concluded that, should the Defendant choose to testify, the State could impeach the Defendant with his prior convictions. We agree with the State.

Pursuant to Rule 609, Tennessee Rules of Evidence, the credibility of the defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. First, the State must give reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). Second, the convictions must be punishable by death or imprisonment over one year or must involve a crime of dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Third, less than ten years must have elapsed between the defendant's release from confinement on the prior conviction and the commencement of the instant

prosecution. Tenn. R. Evid. 609(b). Finally, the impeaching conviction's probative value on credibility must outweigh its unfair prejudice. Tenn. R. Evid. 609(a)(3).

This court reviews the trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard. *See State v. Mixon*, 983 S.W.2d 661, 675 (Tenn.1999); *State v. Blanton*, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996). A trial court abuses its discretion only when it "'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997)).

Trial courts should engage in a two-prong analysis when determining if the probative value of the impeaching conviction is outweighed by its prejudicial effect. *Mixon,* 983 S.W.2d at 674. Trial courts are required to expressly (1) "analyze the relevance the impeaching conviction has to the issue of credibility," as well as (2) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction." *Id*. (citations omitted). The mere fact that a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citations omitted). However, "[w]hen an impeaching conviction is substantially similar to the crime for which the defendant is being tried, there is a danger that jurors will erroneously utilize the impeaching conviction as propensity evidence of guilt and conclude that, since the defendant committed a similar offense, he or she is probably guilty of the offense charged." *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999) (citations omitted).

A trial court should first determine whether the impeaching conviction is relevant to the issue of credibility. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). Tennessee Rule of Evidence 609 suggests that the commission of any felony is "generally probative" of a defendant's credibility. *Id*. The Tennessee Supreme Court, however, has rejected a *per se* rule that permits impeachment by any and all felony convictions. *Mixon*, 983 S.W.2d at 674. A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case. *Waller*, 118 S.W.3d at 371. To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or a false statement. *Id*.

In the present case, prior to trial, the State notified the Defendant of its intent to use twenty-seven prior criminal convictions for impeachment purposes should the Defendant testify. The trial court held a hearing and disallowed evidence of the Defendant's prior theft convictions. Although the convictions were crimes of dishonesty, the trial court

excluded evidence of these convictions because the prejudicial effect was too great. The trial court determined that the State could cross-examine the Defendant for impeachment purposes on five of the Defendant's twenty-seven prior convictions. The Defendant challenges only three of the five the trial court ruled admissible. The Defendant argued at the 609 hearing, and argues on appeal, that the aggravated burglary convictions and attempted breaking and entering charge were too similar to the charged crime of theft. The trial court found that the aggravated burglary convictions and the attempted breaking and entering conviction ("burglary-related convictions") were relevant to the issue of credibility and the offenses involved dishonesty. The trial court considered the possible prejudice but ultimately found that the burglary-related convictions were sufficiently different from the charged conviction and allowed the State the opportunity to attack the Defendant's credibility with the convictions should he choose to testify. At trial, the Defendant chose to testify, and the State used the impeaching convictions.

It is clear from the record that the trial court recognized the similarity between the Defendant's prior convictions for the burglary-related offenses and the theft charge for which he was on trial, realizing the potential for prejudice. The trial court, however, ruled that there was sufficient difference between the offenses, allowing the State to use the aggravated burglary convictions to attack the Defendant's credibility, should he testify at trial. The record demonstrates that the trial court followed all procedural requirements. Therefore, the sole issue for our determination is whether the trial court abused its discretion in allowing the State to impeach the Defendant with his previous burglary-related convictions. *See Mixon*, 983 S.W.2d at 675. This court has previously held that the offenses of burglary and theft are crimes involving dishonesty and, therefore, highly probative of credibility. *Lankford*, 298 S.W.3d 176, 181 n.1 (Tenn. Crim. App. Nov. 3, 2008) (*citing Baker*, 956 S.W.2d at 15). Although the Defendant's prior conviction involved an aggravated burglary and attempted breaking and entering, it was a different type of offense for which he was tried and convicted in this case. *See id*. at 181 (*citing Mixon*, 983 S.W.2d at 674). We conclude that the trial court followed the procedure set forth by Rule 609 of the Tennessee Rules of Evidence and that it did not abuse its discretion when it determined that, if the Defendant testified, the State would be permitted to impeach the Defendant with his prior convictions. The Defendant is not entitled to relief on this issue.

**B. Fines**

The Defendant asserts that the trial court erred when it failed to make specific findings regarding the Defendant's ability to pay the fines imposed by the jury. He contends that, pursuant to Tennessee Code Annotated section 40-35-301(b), the trial court was required to consider the jury's fines and decide whether the fines were appropriate based on the Defendant's "prior history, potential for rehabilitation, financial means, and

mitigating and enhancing factors[.]" The State responds that the Defendant failed to request these findings be made during the sentencing hearing and thus, he has waived this argument, and alternatively, that the seriousness of the offense, the need for deterrence and the Defendant's extensive criminal background justify the imposition of the fines.

The Defendant responds that sentencing issues cannot be waived for failure to raise them at sentencing or in a motion for new trial. *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). Issues not raised before the trial court are typically waived on appeal. *See* Tenn. R. App. P. 3(e); *State v. Maddin*, 192 S.W.3d 558, 561 (Tenn. Crim. App. 2005). Waiver aside, in light of the fact that the record in this case includes information on the Defendant's ability to pay the imposed fine, in the interest of justice, we elect to review the Defendant's argument on the merits.

If the criminal statute permits a fine of more than $50, the jury shall fix the fine, if any. T.C.A. § 40-35-301(b) (2019). Our supreme court has said that fines imposed as part of a criminal sentence are to be reviewed in the same manner as other aspects of the sentence. *See State v. Taylor*, 70 S.W.3d 717, 722-23 (Tenn. 2002); *State v. Bryant*, 805 S.W.2d 762, 765-66 (Tenn. 1991). The trial court, in imposing the sentence, shall then impose a fine in an amount not to exceed the fine fixed by the jury. *See* T.C.A. § 40-35-301(b). The imposition of a fine is to be based upon the factors and principles of sentencing, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence. *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997) (citing *State v. Bryant*, 805 S.W.2d 762, 766 (Tenn. 1991)). This court reviews a trial court's imposition of a fine, which is part of a defendant's sentence, under an abuse of discretion standard. *Bryant*, 805 S.W.2d at 767 ; *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).

At the trial, the jury returned a fine of $1,750 for the theft conviction, a Class E felony. *See* T.C.A. § 40-35-111(b)(5). At the sentencing hearing, no testimony was presented by either party, which left the filed presentence report and the proof at trial for the trial court's consideration. The trial court found that the State had provided six certified convictions for felonies in determining that the Defendant qualified as a career offender, thereby requiring imposition of the maximum length of sentence for the felony class involved. *See* T.C.A. § 40-35-108(c). The trial court sentenced the Defendant to six years for the theft offense, to be served consecutively to the Defendant's sentences in other cases.

As for the fines, the record reflects that the parties and the trial court may have misunderstood the respective roles of the jury and the trial court in imposing the fines. The only mention of the fine was the trial court's statement, "The court imposes the fine in the amount of $1750 assessed by the jury." It appears that the parties and the trial court may

have believed that the fine to be imposed as part of the sentence was to be set by the jury. Such is not the case.

Although the jury is to "fix" the amount of the fine and report it with a guilty verdict, it is the trial court that is obligated to impose a fine, if any - not to exceed that fixed by the jury - as part of the sentence. *See* T.C.A. § 40-35-301(b). The trial court's imposition of a fine, if any, is to be based upon the factors and principles of the 1989 Sentencing Act, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence. *See Bryant*, 805 S.W.2d at 766. Thus, the trial court may not simply impose the fine as fixed by the jury as it did here. Accordingly, we remand for further proceedings pertaining to the assessment of the fine to be imposed.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's admission of the Defendant's prior convictions; however, we vacate the imposition of a fine and remand the case to the trial court for proceedings pertaining to the assessment of the fine consistent with this opinion.

_____s/ *ROBERT W. WEDEMEYER*_____
ROBERT W. WEDEMEYER, PRESIDING JUDGE
